138 Nev., Advance Opinion 34

IN THE SUPREME COURT OF THE STATE OF NEVADA

CHRISTOPHER SENA,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 79036

FILED

MAY 26 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of 1 count of conspiracy to commit sexual assault, 16 counts of lewdness with a child under the age of 14, 9 counts of sexual assault of a minor under 14 years of age, 19 counts of sexual assault of a minor under 16 years of age, 9 counts of incest, 8 counts of open or gross lewdness, 11 counts of sexual assault, 3 counts of preventing or dissuading a witness or victim from reporting a crime or commencing prosecution, 3 counts of child abuse, neglect or endangerment via sexual abuse, 5 counts of use of a minor in producing pornography, 7 counts of possession of visual presentation depicting the sexual conduct of a child, 2 counts of child abuse, neglect or endangerment via sexual exploitation, 1 count of use of a minor under the age of 14 in producing pornography, and 1 count of use of a minor under the age of 18 in producing pornography. Eighth Judicial District Court, Clark County; William D. Kephart, Judge.

*Affirmed in part, vacated in part, and remanded.*

Darin F. Imlay, Public Defender, and David Lopez-Negrete and William M. Waters, Chief Deputy Public Defenders, Clark County, for Appellant.

22-16706

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Alexander Chen, Chief Deputy District Attorney, and Julia A. Barker, Deputy District Attorney, Clark County,
for Respondent.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, HERNDON, J.:

Appellant Christopher Sena sexually and physically abused his own children and others for over a decade, sometimes with the help of his wife and ex-wife. He was convicted of 95 counts of various crimes related to these acts. In this opinion, we clarify our application of the statute of limitations to crimes involving the sexual abuse of children, and we conclude that the statute of limitations did not preclude any of the charges brought against Sena. The crimes associated with his daughter were not barred by the statute of limitations because they remained undiscovered under the law until she left the home. Additionally, the other crimes were not barred by the statute of limitations because they were conducted in a secret manner, and his wife's and ex-wife's knowledge of the crimes did not constitute discovery since each of them were acting *in pari delicto* with Sena.

This matter also presents us with a novel issue regarding the correct unit of prosecution for the crime of incest. Because the incest statute's language is ambiguous regarding the unit of prosecution, and the legislative history, our previous decisions, and public policy do not

adequately clarify that ambiguity, under the doctrine of lenity, we conclude the unit of prosecution is per victim, not per instance. Thus, we vacate six of the nine incest convictions. We also vacate two counts of possession of visual presentation depicting the sexual conduct of a child based on a unit-of-prosecution analysis because the State pleaded multiple possession charges as having occurred at the same time, and we vacate one count of child abuse or neglect via sexual abuse because it is redundant to another count. We address Sena's other challenges on appeal below, and none of them warrants reversal. We remand this case for further proceedings consistent with this opinion.

## BACKGROUND

Sena met his first wife, Terrie, in 1987, and they had their first child, AS, in May 1990. They married shortly thereafter. They had their second child, TS, in December 1994. Sena and Terrie divorced in 1997. Sena married his second wife, Deborah, in 1998, and they had their first child, BS, in August 1998. Sena and Deborah eventually moved in together, so that they and AS, BS, and TS all lived under one roof. Around the same time, in 1998, Terrie had another child, RS, with another man. Around RS's birth and while Sena and Deborah were still married, Sena rekindled a sexual relationship with Terrie. In 1999, Terrie and RS moved into Sena and Deborah's home, where AS, TS, and BS were also still residing.

Beginning at least as far back as when Terrie moved into Sena and Deborah's home, when AS was 9 years old, Sena would physically abuse all four children residing in the house. He would throw household items at them, such as remote controls, rocks, a wrench, and shoes. Sena once threw a metal pipe at AS, hitting her in the back of the head, and after other people learned about the injury, he beat her with a wooden spoon. When AS was

Supreme Court
of
Nevada

(O) 1947A

14, Sena became angry with her and subsequently grabbed her by the hair, dragged her into the house, threw her on the floor, and pressed his foot down on her throat. Sena would slap BS and push him to the ground and in one instance threw RS against a table. In another instance, Sena pushed TS to the ground and pressed his foot on TS's chest.

In 2001, when AS was 11 years old, Sena began sexually abusing her as well. On the first occasion, he masturbated in front of her, touched her chest and vagina over her clothes, directed her to undress and touched her vagina again, and anally penetrated her. After he assaulted her, Sena told AS he had "police friends," no one would believe her if she reported it, and she would be the one sent to jail because she was the one that had done something wrong. Thereafter, as AS testified, Sena subjected AS to sexual abuse almost every day and continued at least two times per month after AS turned 14. AS testified that while she did not want to sexually interact with Sena, she submitted to him because he was generally in a better mood afterward and would be less likely to physically abuse her brothers.

Sena continued to sexually abuse AS when she was in high school, with multiple sexual contacts occurring per month when she was 16-18 years old. When AS was 14, Sena orchestrated a sexual encounter between himself, Terrie, and AS. Around AS's 18th birthday, Sena orchestrated a sexual encounter between himself, AS, and Deborah. Sena continued to subject AS to unwarranted sexual encounters after she graduated from high school, though they became less frequent. AS did not move out of the house when she turned 18 because she did not want to leave her brothers with Sena and because she believed that he continued to be less abusive to them when she had sex with him. Sena also constantly

monitored what AS was doing. He set up cameras around the house when AS was around 18 years old, and if she and her brothers were not in front of the cameras when he was not home, he would call and ask them where they were. AS testified that when she started working at a grocery store, Sena would know what she had done at work without even asking her.

Sena began sexually abusing TS when he was between 13 and 15 years old. In the first instance, while Sena watched and recorded the interaction, he directed Deborah and TS to wash each other's bodies, directed Deborah to perform fellatio on TS, and directed TS to vaginally penetrate Deborah, which TS unsuccessfully attempted to do. In another instance, when TS was 15 or 16, Sena orchestrated another sexual encounter between himself, TS, and Deborah. Sena filmed that assault. When TS was around 17 or 18 years old, he stopped living in the home full time.

When RS was 11 or 12, Sena sexually assaulted him on three instances. After the third instance, the sexual assaults stopped for a while but the physical abuse continued, including an instance where Sena repeatedly slapped RS until he made a statement that he felt loved in the house. The sexual assaults resumed when RS was between 12 and 14. During this time period, Sena orchestrated 2 sexual encounters between himself, RS, and RS's mother, Terrie.

When BS was 14, Sena threw him to the floor, pinned his arms down, and hit him repeatedly. Around that same time, Sena began sexually abusing BS. In one instance, Sena masturbated while directing Terrie to perform fellatio on BS and directing her to insert BS's penis into her vagina. Sena threatened to kill BS if he told anyone. In another instance, at Sena's direction, BS vaginally penetrated Terrie and she performed fellatio on BS.

When BS was 14 or 15, Sena also orchestrated a sexual encounter between himself, BS, and BS's mother, Deborah. Sena filmed this assault.

Sena's sexual proclivities were not limited to his own children. He committed lewd acts upon Terrie's niece, EC, on multiple occasions when she was 11 and 12 years old. He also filmed EC taking a shower in his home while Terrie performed fellatio on Sena. Additionally, Sena showed pornography to Terrie's other underage niece, TG, and filmed TG taking a shower in his home while Terrie again performed fellatio on Sena.

In 2014, when AS was 24 years old, BS revealed to her that Sena was making him have sex with Terrie and BS was suicidal because of it. Up until that point, AS had been unaware that Sena had been sexually assaulting her brothers too and, with this new information, realized that submitting to Sena had not actually protected them from being sexually assaulted. AS and BS gained the courage to flee Sena's home, they convinced Deborah to help them escape, and all three of them left. After a few months, they reported the crimes to the police, leading to Sena's arrest. During Sena's arrest, the police conducted a search of the home and found devices containing pornographic images, including images of BS, RS, TS, EC, and TG, as well as images of Terrie's sister MC when she was underage.

Sena was charged with 120 counts pertaining to his various acts of physical and sexual abuse. He unsuccessfully moved to dismiss counts 2-53 concerning AS, arguing they were barred by the statute of limitations. At Sena's trial, the district court directed the audience not to come and go during arguments or during witness testimony. Sena did not object to the court policy until the 8th day of trial and again on the 9th day of trial. Both times the district court overruled his objection, concluding that the courtroom was not closed. The jury convicted Sena of 95 counts, and he was

SUPREME COURT
OF
NEVADA

(O) 1947A

sentenced to serve concurrent and consecutive prison terms totaling 327 years and 4 months to life in the aggregate.[1]

## DISCUSSION

Sena challenges his convictions on multiple fronts. He first contends that numerous counts were barred by the statute of limitations. Second, he argues that there were multiple convictions for the same offense related to the counts of incest, possession of child pornography, and child abuse, neglect or endangerment related to the incident with Deborah and TS in the shower. Third, he challenges the sufficiency of the evidence supporting the conspiracy to commit sexual assault and the counts related to the videos of Terrie's nieces in the shower. Fourth, he contends that his convictions for open or gross lewdness violated the Double Jeopardy Clause because they were lesser-included offenses of child abuse, neglect or endangerment. Last, he argues that the district court violated his constitutional rights by partially closing the courtroom during the jury trial.

*Statute of limitations*

Sena asserts that many of the counts alleged against him were barred by the statute of limitations.[2] Sena was charged with crimes committed between 2001 and 2014. "[W]ith respect to limitation periods

---

[1]In exchange for an agreement to testify against Sena, Terrie and Deborah each pleaded guilty to one count of sexual assault with a sentence of 10 years to life in prison.

[2]We note that when pursuing a statute of limitations defense at trial, the defendant can and should request a jury instruction on the issue and a special interrogatory as part of the jury verdict form so the jury can make a factual finding regarding the date of discovery. Doing so here would have at least partially avoided the issue now complained of.

and tolling statutes, the statutes in effect at the time of the offense control." *Bailey v. State*, 120 Nev. 406, 407-08, 91 P.3d 596, 597 (2004) (quoting *State v. Quinn*, 117 Nev. 709, 712, 30 P.3d 1117, 1119 (2001)). From 2001 to 2014, the statute of limitations for sexual assault was 4 years after the offense. *See* 1997 Nev. Stat., ch. 248, § 2(1), at 891 (NRS 171.085(1)) (additionally amended in 2001, 2003, 2005, 2009, and 2013). The statute of limitations for most other felonies was 3 years. *See id.* § 2(2) (NRS 171.085(2)).

NRS 171.095, which governs when the statutes of limitations outlined in NRS 171.085 and NRS 171.090 can be tolled, was relevantly amended in 2001, 2005, 2011, and 2013. The 1999 version of NRS 171.095(1) states the following:

> (a) If a felony, gross misdemeanor or misdemeanor is committed in a secret manner, an indictment for the offense must be found, or an information or complaint filed, within the periods of limitation prescribed in NRS 171.085 and 171.090 after the discovery of the offense, unless a longer period is allowed by paragraph (b) . . . .

> (b) An indictment must be found, or an information or complaint filed, for any offense constituting sexual abuse of a child, as defined in NRS 432B.100, before the victim of the sexual abuse is:

> > (1) Twenty-one years old if he discovers or reasonably should have discovered that he was a victim of the sexual abuse by the date on which he reaches that age; or

> > (2) Twenty-eight years old if he does not discover and reasonably should not have discovered that he was a victim of the sexual abuse by the date on which he reaches 21 years of age.

1999 Nev. Stat., ch. 631, § 18(1), at 3525. In 2013, the statute was amended such that the age limit provided in NRS 171.095(1)(b)(1) was increased to 36 years old and the age limit in NRS 171.095(1)(b)(2) was increased to 43 years old. *See* 2013 Nev. Stat., ch. 69, § 3, at 247. This change has survived and is reflected in the current version of the statute.

This court has explained the "secret manner" provision in NRS 171.095 as follows:

> [A] crime is done in a secret manner, under NRS 171.095, when it is committed in a deliberately surreptitious manner that is intended to and does keep all but those committing the crime unaware that an offense has been committed. Therefore normally, if a crime of physical abuse, or a related crime, is committed against a victim who remains alive, it would not be committed in a secret manner under the statute. The victim is aware of the crime and has a responsibility to report it. However, given the inherently vulnerable nature of a child, we conclude that the crime of lewdness with a minor can be committed in a secret manner, even though a victim is involved.

*Walstrom v. State*, 104 Nev. 51, 56, 752 P.2d 225, 228 (1988),[3] *overruled on other grounds by Hubbard v. State*, 112 Nev. 946, 920 P.2d 991 (1996). This court rejected the broad proposition that "[c]rimes against persons, by their very nature, cannot be concealed" when it came to child sex crimes, "as it fails to take into account the vulnerability of children and apparently assigns to them full adult responsibility for immediately reporting crimes in which they are victims." *Id.* at 55, 752 P.2d at 228 (internal quotations

---

[3]Considering the 1985 version of NRS 171.095. *See* 1985 Nev. Stat., ch. 658, § 12, at 2167.

omitted). We also noted that because of the repugnant nature of sex crimes against a child, the crime "is almost always intended to be kept secret." *Id.* at 57, 752 P.2d at 229. We further held that, as for the applicable standard of review, "[i]f substantial evidence supports a trier of fact's determination that a crime was committed in a secret manner, we will not disturb this finding on appeal." *Id.* at 56, 752 P.2d at 229.

In *State v. Quinn*, 117 Nev. at 715-16, 30 P.3d at 1121-22 (footnote omitted), the court concluded the following:

> [D]iscovery [for the purposes of NRS 171.095(1)(a)] occurs when any person—including the victim—other than the wrongdoer (or someone acting in pari delicto with the wrongdoer) has knowledge of the act and its criminal nature, unless the person with knowledge: (1) fails to report out of fear induced by threats made by the wrongdoer or by anyone acting in pari delicto with the wrongdoer; or (2) is a child-victim under eighteen years of age and fails to report for the reasons discussed in *Walstrom*. Under this rule, then, a crime can remain undiscovered even if multiple persons know about it so long as the silence is induced by the wrongdoer's threats.

The court further noted that this approach "realistically recognizes that a wrongdoer can perpetrate a secret crime by threatening anyone with knowledge to remain silent about a crime and prevents the wrongdoer from unfairly manipulating the statute of limitations to his advantage." *Id.* at 716, 30 P.3d at 1122.

*Challenged counts addressed in the motion to dismiss (counts 2-53)*

Sena adequately preserved the statute of limitations issue as to counts 2-53 because he moved to dismiss them before trial; therefore, he is entitled to de novo review for these counts. *See Mendoza-Lobos v. State*, 125

Nev. 634, 642, 218 P.3d 501, 506 (2009) (holding that questions of statutory interpretation are reviewed de novo). Because some of these counts may have occurred after AS was 18 years old, we will first address the counts that clearly occurred while AS was under 18 and then separately address the counts that may have occurred when she was 18 or older.

*Counts 2-30, 45, and 52*[4]

NRS 171.095(1)(a) states that if a covered crime "is committed in a secret manner," charges must be filed within the relevant periods of limitation "after the discovery of the offense, *unless a longer period is allowed by paragraph (b)*." (Emphasis added.) For the time period applicable to these charges, if the victim of a crime constituting child sexual abuse discovered or should have discovered that they were a crime victim prior to turning 21, the crime's statute of limitations was only tolled until that victim turned 21 years old. 1999 Nev. Stat., ch. 631, § 18(1), at 3525 (NRS 171.095(1)(b)(1)) (additionally amended in 2001 and 2005). If the victim did not and should not have discovered that they were a crime victim prior to turning 21, the tolling period was extended until the victim turned 28 years old. *Id.* (NRS 171.095(1)(b)(2)) (additionally amended in 2001 and 2005).

The district court applied NRS 171.095(1)(a)'s tolling provision to counts 2-52, concluding that because Sena conducted the crimes in a secret manner, the statute of limitations was tolled until AS discovered the crimes. The district court, however, erred because NRS 171.095(1)(a) clearly provides that it is applicable only if NRS 171.095(1)(b) does not

---

[4]The jury acquitted Sena of counts 5, 16, 17, 18, 30, and 45.

SUPREME COURT
OF
NEVADA

(O) 1947A

provide a longer tolling period. Thus, the district court should have first considered whether NRS 171.095(1)(b) provided a longer tolling period before applying NRS 171.095(1)(a).

To determine whether a longer tolling period was applicable under NRS 171.095(1)(b), we must determine what constitutes a child sexual abuse victim's "discovery" of the crime. Although we specifically defined the meaning of "discovery" in NRS 171.095(1)(a) in *Quinn*, the meaning of "discovery" in NRS 171.095(1)(b) has yet to be directly defined by statute or by this court. We hold now that "discovery" as used in NRS 171.095(1)(b) has the same meaning as defined in *Quinn*. With this definition in mind, we hold that because AS's silence was induced by the threats Sena made against her and her brothers, AS did not legally discover the crimes against her until she was able to flee Sena's home in June 2014 at 24 years of age, which means that NRS 171.095(1)(a) would provide tolling until that point, then the relevant limitation period for each count would begin to run. For the sexual assault charges, this would be 4 years after AS's escape, meaning that the statute of limitations would expire in June 2018, and for all other counts this would be 3 years after AS's escape, thus meaning that the expiration date would be June 2017.

In comparison, NRS 171.095(1)(b)(2) would extend the statute of limitations period until AS's 28th birthday, May 22, 2018. Therefore, for the sexual assault counts, the district court did not err because NRS 171.095(1)(a) provided a limitation period that extended until June 2018, whereas NRS 171.095(1)(b)(2) would only provide a limitation period until May 22, 2018. For all other counts, NRS 171.095(1)(b)(2) provided the longer period because it provided a limitation period until May 22, 2018, whereas NRS 171.095(1)(a) only provided a limitation period that extended

Supreme Court
OF
Nevada

(O) 1947A

12

until June 2017. We thus conclude that NRS 171.095(1)(b) was the applicable section for all counts other than the sexual assault counts, and the district court erred in concluding that NRS 171.095(1)(a) applied to these counts. That said, this error did not affect the ultimately correct conclusion that these counts were filed within the applicable statutes of limitations, as these counts were first filed in 2014, well before the limitation period expired. *See Picetti v. State*, 124 Nev. 782, 790 & n.14, 192 P.3d 704, 709 & n.14 (2008) (holding that if the district court reaches the right result, even if for the wrong reason, the result will be upheld by the appellate court).[5]

---

[5]Sena argues that the district court erred by concluding that the statute of limitations could be tolled past AS's 18th birthday under NRS 171.095(1)(a), citing *Houtz v. State*, 111 Nev. 457, 461, 893 P.2d 355, 357-58 (1995), as supportive authority, but *Houtz* is not analogous to this case. Although we conclude that NRS 171.095(1)(b) is applicable to some charges, not NRS 171.095(1)(a), we still take this opportunity to make clear that this argument has no merit for multiple reasons. First, the crime in *Houtz* was committed prior to the enactment of the second part of the statute, which allowed for automatic tolling of child sexual abuse crimes, and so therefore only the secret manner tolling provision was in existence and had the possibility to apply. 111 Nev. at 461, 893 P.2d at 357. NRS 171.095(2), the precursor to today's NRS 171.095(1)(b), was enacted in 1985 and provided that the statute of limitations for a child sexual abuse crime could be tolled until the child was 18 under certain circumstances. *See* 1985 Nev. Stat., ch. 658, § 12, at 2167-68 (NRS 171.095(2)). In *Houtz*, the court held that allowing the child sexual abuse crime to toll under the secret manner provision until the victim was 18 years old was consistent with the since-enacted NRS 171.095(2) provision. 111 Nev. at 462, 893 P.2d at 358 ("Although the addition to NRS 171.095(2) in 1985 is not controlling in this case as previously explained, it is consistent with our conclusion."). Because the automatic tolling periods for child sexual abuse cases has since been drastically expanded, and also all of the crimes in this case occurred long

SUPREME COURT
OF
NEVADA

(O) 1947A

*Counts 31-44 and 46-51*[6]

The district court applied NRS 171.095(1)(a) to these charges as well. We first conclude that the fact that Deborah participated in some of these crimes and thus had knowledge of them did not render the crimes "discovered" because Deborah was acting *in pari delicto* with Sena.[7] Furthermore, to the extent that these charges occurred prior to AS's 18th birthday on May 22, 2008, they constitute sexual abuse of a child and the same analysis as we provided for counts 2-30, 45, and 52 applies. Thus, for the sexual assault charges that occurred prior to May 22, 2008, the district court did not err. For all other counts that occurred prior to May 22, 2008, the district court did err; however, as with counts 2-30, 45, and 52, we nonetheless uphold these convictions because this error did not affect the correct conclusion that counts 31-44 and 46-51 were all filed within the

---

after the 1985 amendment was made, there are multiple factors that decrease *Houtz*'s value as precedent.

Moreover, the facts in *Houtz* are also distinguishable. In *Houtz*, the victim ceased interaction with the perpetrator around age 14 and failed to report until he was 25. *Id.* at 458, 893 P.2d at 355-56. In this case, Sena constantly threatened AS and the other children up until his arrest. To require a victim to report, even in the face of threats instilling fear, runs directly counter to the purpose of NRS 171.095(1)(a) and would be a nonsensical result.

[6]The jury acquitted Sena of counts 34, 38, 39, 40, 43, and 44.

[7]Sena makes arguments about Deborah's knowledge regarding only counts 46-51; he does not make arguments about Terrie or her knowledge of the crimes committed against AS. However, we conclude that Terrie was acting *in pari delicto* with Sena as well, so the same analysis would apply to her.

Supreme Court
of
Nevada

(O) 1947A

14

applicable statutes of limitations. *Picetti*, 124 Nev. at 790 & n.14, 192 P.3d at 709 & n.14.[8]

To the extent that these crimes were committed on or after AS's 18th birthday, we conclude that these counts would not qualify for tolling under NRS 171.095(1)(b) because they would not constitute sexual abuse of a child. Thus, if this were the case, these charges were eligible for tolling only under NRS 171.095(1)(a). AS was too scared of Sena to be able to disclose his crimes to anyone, and thus, she did not legally discover his crimes until she fled the home. This was catalyzed by her brother's disclosure of his own sexual abuse and resulting suicidality, which shattered her long-standing belief that sexually submitting herself to her father shielded her brothers. Up until that point, which did not occur until 2014, AS was completely intimidated by and fearful of Sena's threats. Thus, to the extent these crimes occurred on or after AS's 18th birthday, we conclude that the district court correctly found that these crimes were tolled under NRS 171.095(1)(a) because they were committed in a secret manner and AS's discovery was thwarted until she fled Sena's house in June 2014.

*Count 53*

Count 53, which concerned Sena dissuading AS from reporting, commencing criminal prosecution, or causing Sena's arrest, is not covered by NRS 171.095(1)(b) because it is not an offense constituting sexual abuse

---

[8]We note that the limit included in NRS 171.095(1)(b)(1) was raised from 21 to 36 years old in 2013. However, by 2013, AS was an adult, so any crimes committed against her to which the 2013 amendment to NRS 171.095 would apply would not be eligible for tolling under NRS 171.095(1)(b), as they would not constitute sexual abuse of a child. Thus, we need not consider the change of the age limit in our analysis.

of a child. However, this crime was committed in a secret manner, such that it was covered by NRS 171.095(1)(a). Therefore, we conclude that the district court did not err in finding that the secret manner provision applied, and the statute of limitations for count 53 was tolled until AS escaped in June 2014.

*Challenged counts not addressed in motion to dismiss (counts 1, 55, 57, 59, 69, 77, 99, 103, 105, 115, 117, and 118)[9]*

Because Sena never asserted arguments below regarding the statute of limitations for these charges, he has forfeited the issue as to these counts and is entitled to only a plain error review. NRS 178.602 ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").[10]

---

[9]Sena makes similar arguments here as he does regarding the counts pertaining to AS, contending that NRS 171.095(1)(a) cannot toll a crime's statute of limitations past the victim's 18th birthday. For the same reasons as previously stated, we conclude that this argument is also without merit regarding these counts.

[10]Sena asks this court to consider sua sponte whether his trial counsel was ineffective in failing to properly raise his statute of limitations defenses because his appellate counsel cannot raise the issue, as trial and appellate counsel work in the same office, thus creating a conflict of interest. This court generally does not consider ineffective-assistance-of-counsel claims on direct appeal when the district court has not held an evidentiary hearing on the issue, unless such a hearing would be needless. *Archanian v. State*, 122 Nev. 1019, 1036, 145 P.3d 1008, 1020-21 (2006). Because the standard for ineffectiveness of counsel is high and this court has concluded an evidentiary hearing is needless only when the ineffectiveness is blatantly obvious, such as when counsel makes sarcastic comments encouraging the jury to convict his client, *see Mazzan v. State*, 100 Nev. 74, 77-80, 675 P.2d 409, 411-13 (1984), we conclude that we need not sua sponte consider this issue.

 

*Victims' knowledge of the crimes alleged in counts 1, 55, 57, 77, 99, 103, and 105 did not constitute discovery, nor did Terrie and Deborah's knowledge*

Sena asserts the statute of limitations barred count 1 (conspiracy to commit sexual assault), count 55 (child abuse, neglect or endangerment for the bathing incident with TS and Deborah in the shower), count 57 (child abuse, neglect or endangerment for the sex incident with TS and Deborah in the shower), count 77 (use of a minor in producing pornography for filming Deborah having sex with BS), count 99 (use of a minor in producing pornography for filming Terrie performing sexual acts on RS), count 103 (use of a minor in producing pornography for filming Terrie performing fellatio on RS), and count 105 (child abuse, neglect or endangerment for showing RS pornography) because AS, TS, BS, and RS knew about the crimes and Deborah or Terrie participated in or had knowledge of them. Thus, Sena argues, these crimes were discovered at the time they occurred, and the statute of limitations had therefore expired by the time charges had been filed.

AS, TS, BS, and RS all testified that Sena would often threaten them and they would go along with whatever Sena told them to do because they were afraid of him. Sena was often violent toward the children, and they witnessed violence perpetrated against their siblings. Sena also started abusing each child when the child was young. Regardless of the nature of the crime, Sena created a living environment for AS, TS, BS, and RS that was so threatening they were cowed into silence about the crimes that had been committed against them. This meets the first prong of the *Quinn* analysis, which states that the person with knowledge of the crime

SUPREME COURT
OF
NEVADA

(O) 1947A

must "fail[ ] to report out of fear induced by threats made by the wrongdoer." 117 Nev. at 715, 30 P.3d at 1122.

Furthermore, when Terrie and Deborah were participating in these crimes, they were acting in conspiracy with Sena, and thus their knowledge did not constitute discovery. *Id.* at 715, 30 P.3d at 1121-22 (recognizing that a person acting *in pari delicto* with the wrongdoer cannot discover the crime for the purposes of NRS 171.095(1)(a)). Therefore, these crimes were not discovered at the time they occurred, and the statute of limitations for each of these counts was therefore tolled. The charges associated with these crimes were filed well before the applicable limitation periods expired. Sena has therefore failed to demonstrate plain error.

*Counts 59, 69, 115, and 118*

Sena challenges count 59 (use of a minor in producing pornography for filming Deborah and TS having sex), count 69 (use of a minor in producing pornography for filming Deborah and TS having sex on another occasion), count 115 (use of a minor under the age of 14 in producing pornography for filming EC nude in the shower), and count 118 (use of a minor under the age of 18 in producing pornography for filming TG in the shower) as being precluded by the statute of limitations. Because TS, EC, and TG each did not know they were being filmed, they could not have had knowledge that would in turn deem each crime discovered. Moreover, for the same reasons stated above, any knowledge Deborah or Terrie had of these crimes did not render them discovered. As such, the statute of limitations for each of these counts was tolled and the counts were filed well within the relevant statutes of limitations. Thus, Sena failed to demonstrate plain error.

*Count 117*

Sena challenges count 117 (child abuse, neglect or endangerment for showing TG pornography) on statute of limitations grounds. According to *Quinn*, discovery does not occur when the person with knowledge "is a child-victim under eighteen years of age and fails to report for the reasons discussed in *Walstrom*." *Quinn*, 117 Nev. at 715, 30 P.3d at 1122. *Walstrom* recognizes that child sex abuse crimes involve emotional and psychological manipulation of a child that can in turn implicitly discourage disclosure. 104 Nev. at 55, 752 P.2d at 228. These factors were at play in TG's circumstances because Sena showed her the images when she was young—between 11 and 13—and according to TG, he told her "this [is] normal, this is natural. Like, don't be embarrassed[,] . . . it [is] okay," normalizing his deviant behavior.

Thus, count 117 was tolled until TG turned 18 on January 9, 2015, and thereafter the 3-year statute of limitations began to run. The third amended criminal complaint was filed December 15, 2015, well within the 3-year statute of limitations. *See* 2003 Nev. Stat. Spec. Sess., ch. 10, § 4, at 273 (NRS 171.085(2)) (additionally amended in 2005 and 2009) (providing that statute of limitations is 3 years after the commission of the offense, except when tolled by NRS 171.095).[11] Sena thus failed to

---

[11]Sena argues that the allegations behind count 117 are distinguishable from the facts in *Walstrom* because TG was not subjected to a lewd act and TG was not under 5 years old, and so therefore the policy rationales cited in *Walstrom* should not apply. But *Walstrom* can apply to any sexual crime against any child, even if the child is not under the age of 5. 104 Nev. at 56, 752 P.2d at 228. Further, although the *Walstrom* court did note that "[s]ome research indicates that a substantial number of child abuse victims may be under the age of five," *id.* at 55-56, 752 P.2d at 228,

Supreme Court
OF
Nevada

(0) 1947A

demonstrate plain error with regard to whether count 117 was filed within the relevant statute of limitations.

*Alleged multiple convictions for the same offense*

*Incest charges*

Sena contends that six of his incest convictions must be vacated because he can only be convicted of one count of incest for each victim, instead of being convicted of numerous counts of incest for each sexual interaction with a victim. Sena was convicted of six counts of incest related to his sexual encounters with AS, two counts of incest related to assisting/causing Deborah to commit fornication or adultery with BS, and one count of incest related to assisting/causing Terrie to commit fornication or adultery with RS.

NRS 201.180 provides that it is a felony for "[p]ersons being within the degree of consanguinity within which marriages are declared by law to be incestuous and void who intermarry with each other or who commit fornication or adultery." "[D]etermining the appropriate unit of prosecution presents an issue of statutory interpretation and substantive law." *Castaneda v. State*, 132 Nev. 434, 437, 373 P.3d 108, 110 (2016) (quoting *Jackson v. State*, 128 Nev. 598, 612, 291 P.3d 1274, 1283 (2012)

the exact age of the victim was ultimately not relevant to the case's outcome; what was important was that the victim was a child, *id.* at 56, 752 P.2d at 228 (noting that "[g]iven the limited emotional, intellectual, psychological, and physical development of children," children cannot be held to the same level of reporting responsibilities as adults). Finally, while the *Walstrom* court was concerned with the specific crime of lewdness with a minor, the rule in *Walstrom* applies to any child sexual abuse crime that could be tolled by NRS 171.095(1)(a), not just lewdness with a minor. *See Quinn*, 117 Nev. at 715, 30 P.3d at 1121 (recognizing that *Walstrom* generally applies to "child sexual abuse crimes").

(internal quotations omitted)). Because it involves statutory interpretation, our review is de novo and begins with the statutory text. *Id.*

When a statute is clear on its face, it is unambiguous, and the court may not go beyond it to determine legislative intent. *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011). "An ambiguity arises where the statutory language lends itself to two or more reasonable interpretations." *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004). When a statute is ambiguous, this court looks to factors "including related statutes, relevant legislative history, . . . prior judicial interpretations of related or comparable statutes by this or other courts," reason, and public policy. *Castaneda*, 132 Nev. at 439, 373 P.3d at 111; *Lucero*, 127 Nev. at 95-96, 249 P.3d at 1228. If "other statutory interpretation methods, including the plain language, legislative history, reason, and public policy, have failed to resolve a penal statute's ambiguity," the statute must be liberally interpreted in the accused's favor. *Lucero*, 127 Nev. at 99, 249 P.3d at 1230.

A plain reading of the statute does not reveal the appropriate unit of prosecution for incest because nothing in the statute on its face indicates whether it should apply on a per-relationship basis or on a per-act basis, and a reasonable person could interpret the statute either way. There are two ways in which a person may violate NRS 201.180: (1) by marrying a relative within a certain degree of consanguinity, NRS 201.180(1), or (2) by committing fornication or adultery with a relative within a certain degree of consanguinity, NRS 201.180(2). We start our analysis with the acknowledgment that it would be incorrect for a violation under NRS 201.180(1) to have a different unit of prosecution than NRS 201.180(2). Because no incestuous intermarriage occurred in this case, only NRS

Supreme Court
of
Nevada

(O) 1947A

21

201.180(2) applies. We consider NRS 201.180(1) for guidance as to how to interpret NRS 201.180(2) in this case.

If one were to violate the statute through intermarriage, NRS 201.180(1), the logical unit of prosecution would be one charge per marriage. One could reasonably construe from this that the unit of prosecution for NRS 201.180(1) corresponds to the one *relationship* between people who married. However, one could also reasonably conclude that the unit of prosecution corresponds to the one *act* of getting married. Thus, it follows that it would also be reasonable to conclude that each *act* of fornication or adultery would serve as a basis for a separate count of incest. Accordingly, we conclude the statute's language is ambiguous regarding the correct unit of prosecution.

While we would normally turn to legislative history to guide us, after examination of the legislative history available, it appears that the language of the law defining incest in Nevada has remained consistent since 1861, even before Nevada obtained statehood. We thus conclude that legislative history does not aid us here and we turn next to prior judicial interpretations.

In *State v. Seymour*, the defendant was convicted of one count of incest for a pattern of behavior in which he and his first cousin, to whom he was not married, had sexual intercourse "about twice a week" over a period of months. 57 Nev. 35, 38, 57 P.2d 390, 391 (1936). According to the court's descriptions of the cousins' relationship, it appeared to be a consensual romantic relationship. *See id.* at 38-39, 57 P.2d at 391.

In *Douglas v. State*, the defendant forced his daughter to have sex with him twice, once when she was a minor and another time as an adult. 130 Nev. 285, 286, 327 P.3d 492, 493 (2014). Douglas was charged

SUPREME COURT
OF
NEVADA

(O) 1947A

with and convicted of sexual assault of a minor under 14 years of age, sexual assault, and two counts of incest. *Id.* While both incest convictions were allowed to stand, it must be noted that the appropriate unit of prosecution was not at issue in *Douglas*. *Id.* at 285, 327 P.3d at 492.

In *Guitron v. State*, a case decided by the Nevada Court of Appeals, the defendant was convicted of one count of incest, among other charges, after his minor daughter became pregnant and it was revealed that he was the father. 131 Nev. 215, 220, 350 P.3d 93, 96-97 (Ct. App. 2015). The defendant argued that he and the underage victim had sex on only one occasion. *Id.* at 220, 350 P.3d at 96. In response, "[t]he State [presented] evidence [that] Guitron had groomed the victim and engaged in sexual conduct with her on multiple occasions, even when the victim resisted his advances." *Id.*

As is shown by *Seymour, Douglas*, and *Guitron*, none of the existing caselaw specifically defines the proper unit of prosecution for NRS 201.180, and mixed approaches were applied. In *Seymour*, where the participants were having sexual intercourse at least twice a week for a period of months, there was only one count of incest, thus indicating that the State either charged the crime on a per-relationship basis or chose a simpler prosecution where it only needed to prove one instance of incest, rather than multiple instances. *Douglas*, which was an incest case between a father and daughter with at least two encounters, included two counts of incest. *Guitron*, in contrast, only included one count of incest; but, because the State and defendant offered conflicting stories on how many encounters occurred, it is impossible to know whether this was intended as on a per-relationship or per-encounter basis.

Because prior judicial interpretations do not aid our consideration of the proper unit of prosecution, we must turn to public policy rationales. Some rationales behind the incest law are based on genetic concerns in resulting children, protecting traditional notions of family, and religious conformity. *See* 42 C.J.S. *Incest* § 4 (2017); *see also* 1 Homer H. Clark, Jr., *The Law of Domestic Relations in the United States* § 2.9, at 152 (2d ed. 1987). Charging violations of NRS 201.180 based on the relationship, rather than each sexual interaction, would protect the notions the statute aims to protect. However, incest laws are, in part, also aimed at protecting child victims from sexual abuse. And while Sena asserts that each act is deterred by other criminal statutes that penalize sex crimes against children, thus obviating the need for incest to be charged on a per-act basis, he is only partially correct. For crimes that pertain to children who are below the age of consent, it is true that the statutory sexual assault laws would apply to each act with a child incapable of consent. However, in a situation where a child over the age of consent consents to sexual interactions with an older relative, that would be outside the purview of statutory sexual assault laws, and thus each instance would not be punished. In that instance, charging incest on a per-act basis would afford additional protection to the victim that charging on a per-relationship basis would not be able to provide. Thus, we conclude that even public policy considerations do not clarify the correct unit of prosecution for the crime of incest.

In conclusion, because there is a dearth of legislative history that speaks to the question, the caselaw that has applied NRS 201.180 reflects a variety of approaches, and public policy arguments do not provide clear guidance on how to interpret the statute, we hold that the rule of lenity

Supreme Court
of
Nevada

(O) 1947A

requires us to construe the ambiguous statute in the accused's favor. *See Lucero*, 127 Nev. at 99, 249 P.3d at 1230; *Firestone v. State*, 120 Nev. 13, 16, 83 P.3d 279, 281 (2004) ("Criminal statutes must be strictly construed and resolved in favor of the defendant." (internal quotations omitted)). As a result, we use the rule of lenity and liberally interpret the statute in the defendant's favor, thus concluding that only three counts of incest, one for each victim, were appropriate. *Lucero*, 127 Nev. at 99, 249 P.3d at 1230. Therefore, we conclude that counts 27, 32, 37, 42, and 47 (pertaining to AS), and count 75 (pertaining to BS) must be vacated.

*Possession of child pornography charges*

Sena challenges his convictions for possession of child pornography as multiple convictions for the same offense. Because Sena specifically admitted guilt in his closing argument as to counts 78, 100, 104, 119, and 120, and therefore conceded them, he has waived the ability to challenge those convictions and we only need to consider whether counts 60 and 116 are redundant. Because this issue presents a question of statutory interpretation, our review is de novo. *Castaneda*, 132 Nev. at 437, 373 P.3d at 110.

Under NRS 200.730, it is unlawful to knowingly and willfully possess "any film, photograph or other visual presentation depicting a person under the age of 16 years as the subject of a sexual portrayal." In *Castaneda*, this court addressed the proper unit of prosecution under NRS 200.730, concluding that the statute's use of the word "any" was ambiguous, and thus, under the doctrine of lenity, "Castaneda's simultaneous possession at one time and place of 15 images depicting child pornography constituted a single violation of NRS 200.730." 132 Nev. at 438, 444, 373 P.3d at 111, 115. In *Shue v. State*, 133 Nev. 798, 804, 407 P.3d 332, 337

(2017), this court applied the unit-of-prosecution analysis from *Castaneda* and concluded that the district court erred in allowing for the crime to be charged on a per-image basis rather than a per-possession basis, when the State failed to present evidence of distinct acts of possession. Specifically, there was no evidence as to whether the videos were independently transferred to the computer or transferred all together, and instead, the State relied on the fact that the videos were recorded on different days. *Id.*

Here, the charging document alleged that Sena possessed all the images on the same date: September 18, 2014. This alone undercuts the State's argument for multiple acts of possession. One of the State's main theories at trial was that these videos were made and possessed at different points in time, but the State failed to reflect this theory in the charges themselves. Additionally, similarly to *Shue*, the argument that each video was created on a different day and thus warranted a separate count fails because it does not establish distinct acts of possession without additional evidence. Lastly, the police recovered all the images in one place at one time, which works against the State's theory.[12] On this basis, we conclude

---

[12]To the extent the State argues that because the digital cameras and gray camcorder seized from Sena's home did not have large enough memories to store multiple videos, Sena must have transferred pornography from those devices to the flash drive, this is a mischaracterization of the record. The detective who analyzed the cameras testified that when he examined the devices, the digital camera "did not have any big storage capability, it didn't have an SD card," and the camcorder "did not have an SD card or anything that can be saved to that either," and so therefore the devices in effect did not have any memory in them so there was nothing to analyze. The detective never testified that these cameras did not have, and never had, the capability to hold multiple videos at once. It is also unclear from the testimony whether these cameras

SUPREME COURT
OF
NEVADA

(O) 1947A

that counts 60 and 116 must be vacated, as they are redundant of the other charged possession of child pornography counts for which guilt was specifically conceded at trial, namely counts 78, 100, 104, 119, and 120.

*Child abuse, neglect or endangerment via sexual abuse charges*

Sena challenges count 57 (child abuse, neglect or endangerment related to Deborah and TS having sex in the shower) as redundant to count 55 (child abuse, neglect or endangerment related to Deborah and TS bathing each other in the shower). Because Sena did not assert this argument at the district court level, he is entitled to only a plain error review. *See* NRS 178.602. This court reviews de novo a redundancy challenge that raises a question of law pertaining to statutory construction. *Ebeling v. State*, 120 Nev. 401, 404, 91 P.3d 599, 601 (2004).

A person is guilty of abuse, neglect or endangerment of a child if the person "willfully causes a child who is less than 18 years of age to suffer unjustifiable physical pain or mental suffering as a result of abuse or neglect or to be placed in a situation where the child may suffer physical pain or mental suffering as the result of abuse or neglect." NRS 200.508(1).[13] Generally, if the child is under the age of 14 and suffers

---

had SD cards in them at one time that simply had been removed before the cameras were seized by police. Regardless, the detective's testimony does not clearly establish that these cameras were capable of only holding one video at a time such that each video had to be independently recorded and then transferred before recording the next one.

[13]Because charging documents state that count 55 and count 57 occurred between December 2, 2008, and December 1, 2010, we consider the version of NRS 200.508(1) that was in effect during that time. *See* 2003 Nev. Stat., ch. 2, § 23 at 22. NRS 200.508 was subsequently amended in 2015.

substantial bodily or mental harm as a "result of sexual abuse or exploitation," the person is guilty of a category A felony. NRS 200.508(1)(a)(1); NRS 200.508(2)(a)(1).

*Rimer v. State* held that child abuse and neglect was a continuing offense because of its "cumulative nature." 131 Nev. 307, 319, 351 P.3d 697, 707 (2015). "Given the nature of this offense, it is apparent that the child-abuse-and-neglect statute may be violated through a single act but is more commonly violated through the cumulative effect of many acts over a period of time." *Id.* at 320, 351 P.3d at 707. "[T]he Legislature intended for child-abuse-and-neglect violations, when based upon the cumulative effect of many acts over a period of time, to be treated as continuing offenses for purposes of the statute of limitations." *Id.*

Because NRS 200.508 is a continuing offense, it was only appropriate to charge one count of abuse, neglect or endangerment via sexual abuse for the incidents with Deborah and TS in the shower. The existing law states that the crime continues until the abuse stops. Therefore, we conclude that we must vacate count 57 because it is redundant of count 55.

*Sufficiency of the evidence*

Sena challenges the sufficiency of the evidence supporting the conspiracy to commit sexual assault count and the counts related to filming Terrie's nieces while they showered. In reviewing for sufficiency of the evidence, the appellate court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998). "In

SUPREME COURT
OF
NEVADA

(O) 1947A

28

a criminal case, a verdict supported by substantial evidence will not be disturbed by a reviewing court." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

> *There was sufficient evidence to support count 1, conspiracy to commit sexual assault*

Sena argues that there was insufficient evidence to support count 1, conspiracy to commit sexual assault. "Nevada law defines a conspiracy as an agreement between two or more persons for an unlawful purpose." *Nunnery v. Eighth Judicial Dist. Court*, 124 Nev. 477, 480, 186 P.3d 886, 888 (2008) (internal quotations omitted). "A person who knowingly does any act to further the object of a conspiracy, or otherwise participates therein, is criminally liable as a conspirator . . . ." *Doyle v. State*, 112 Nev. 879, 894, 921 P.2d 901, 911 (1996) (internal quotations omitted), *overruled on other grounds by Kaczmarek v. State*, 120 Nev. 314, 333, 91 P.3d 16, 29 (2004). Further, "[e]ven though a crime has been committed, the conspiracy does not necessarily end, but it continues until its aim has been achieved." *State v. Wilcox*, 105 Nev. 434, 435, 776 P.2d 549, 549 (1989) (internal quotations omitted). "[A] conspiracy conviction may be supported by 'a coordinated series of acts,' in furtherance of the underlying offense, 'sufficient to infer the existence of an agreement.'" *Doyle*, 112 Nev. at 894, 921 P.2d at 911 (quoting *Gaitor v. State*, 106 Nev. 785, 790 n.1, 801 P.2d 1372, 1376 n.1 (1990), *overruled on other grounds by Barone v. State*, 109 Nev. 1168, 1171, 866 P.2d 291, 293 (1993)). "Direct evidence is not required to establish a conspiracy, but circumstantial evidence may be relied upon. This rule is sanctioned for the obvious reason that experience has demonstrated that as a general proposition a conspiracy

can only be established by circumstantial evidence." *Sheriff v. Lang*, 104 Nev. 539, 543, 763 P.2d 56, 59 (1988) (internal quotations omitted).

We conclude that Deborah's and Terrie's repeated participation in the crimes over a period of years in connection with multiple children; Terrie's statements to police that she enjoyed partaking in the sexual abuse; Deborah's testimony that she continued to participate and did not report the crimes due to fear of prison time, diminishment of reputation, and loss of Sena's affection; and video evidence of Deborah and Terrie each individually discussing with Sena sex acts that they wished to perform upon one of the Sena children immediately before abusing the child, when considered together, is substantial evidence to support the conclusion that there was indeed an agreement between Sena, Deborah, and Terrie. We further conclude that Sena's argument that any conspiracy that may have existed ended after the first assault also has no merit. Conspiracy is a continuing crime. *Wilcox*, 105 Nev. at 436, 776 P.2d at 550. There was sufficient evidence to support that Sena, Deborah, and Terrie acted together in a conspiracy to repeatedly abuse their own children until 2014, when the crimes were finally reported to police.

*There was sufficient evidence to support counts 115 and 118*

Sena argues that there was insufficient evidence to support convictions for counts 115 and 118, which concerned the videos he took of EC and TG in the shower.[14] Part of his argument includes the contention

---

[14]Sena also challenged the sufficiency of the evidence to support counts 116 and 119. However, he conceded guilt on count 119 at trial, and we vacate 116 because it was redundant. Therefore, we do not discuss these counts in this section.

that the "sexual portrayal" language in NRS 200.710(2), which uses the definition provided in NRS 200.700(4), is unconstitutional.

NRS 200.710 provides the following:

> 1. A person who knowingly uses, encourages, entices or permits a minor to simulate or engage in or assist others to simulate or engage in sexual conduct to produce a performance is guilty of a category A felony and shall be punished as provided in NRS 200.750.

> 2. A person who knowingly uses, encourages, entices, coerces or permits a minor to be the subject of a sexual portrayal in a performance is guilty of a category A felony and shall be punished as provided in NRS 200.750, regardless of whether the minor is aware that the sexual portrayal is part of a performance.

NRS 200.700(4) defines "sexual portrayal" as "the depiction of a person in a manner which appeals to the prurient interest in sex and which does not have serious literary, artistic, political or scientific value."[15]

*NRS 200.700(4)'s definition of "sexual portrayal," and the use of "sexual portrayal" in NRS 200.710(2), are constitutional*

Sena first argues that the definition of "sexual portrayal" in NRS 200.700(4) is unconstitutional because NRS 200.700(4) and NRS 200.710(2) are facially invalid. Sena asks us to revisit our decision in *Shue*, 133 Nev. 798, 407 P.3d 332, in light of *United States v. Stevens*, 559 U.S. 460, 470 (2010).

---

[15]Both NRS 200.710 and NRS 200.700 were last amended in 1995, prior to when any of the crimes of which Sena has been convicted occurred. Therefore, no interceding amendments occurred that we need to address.

In *Shue*, this court held that "the phrase, 'which does not have serious literary, artistic, political or scientific value,' sufficiently narrows the statute's application to avoid the proscription of innocuous photos of minors." 133 Nev. at 806, 407 P.3d at 339 (quoting NRS 200.700(4)). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," and the Court has "sustained legislation aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionally protected rights." *New York v. Ferber*, 458 U.S. 747, 757 (1982); *see Shue*, 133 Nev. at 807, 407 P.3d at 339.

In *Stevens*, 559 U.S. at 470-72, the United States Supreme Court held that a federal statute criminalizing the commercial creation, sale, or possession of depictions of animal cruelty was substantially overbroad and, thus, the statute was facially invalid under the First Amendment protection of speech. Recalling *Ferber* and the child pornography statutes addressed therein, the Court noted that "[t]he market for child pornography was intrinsically related to the underlying abuse, and was therefore an integral part of the production of such materials, an activity illegal throughout the Nation" and furthermore that "[i]t rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute." *Id.* at 471 (alteration in original) (internal quotations omitted). Because "depictions of animal cruelty" was not a "historically unprotected" category, the Court refused to recognize it as a category of speech outside First Amendment protection. *Id.* at 471-72.

The core point made in *Shue* was that the type of conduct that the appellant was engaged in did not require the First Amendment's

protection, because protecting children from being subjected to sexually abusive behavior was "a government objective of surpassing importance." *Ferber*, 458 U.S. at 757; *Shue*, 133 Nev. at 806-07, 407 P.3d at 339. The Supreme Court distinguished "depictions of animal cruelty" from child pornography, *Stevens*, 559 U.S. at 471-72, which the court had previously recognized in *Ferber* was a category of speech that was not entitled to the First Amendment's protections because child pornography was "intrinsically related" to the underlying sexual abuse of children, *Ferber*, 458 U.S. at 759. *Stevens* did not invalidate the holding in *Ferber*, nor is it incongruous with the holding in *Shue*; rather, *Stevens* only distinguished "depictions of animal cruelty" from child pornography when contemplating whether each category was protected by the First Amendment. Thus, this court has already considered the issue of whether NRS 200.700(4) and NRS 200.710(2) are facially invalid in *Shue* and decided that they were both constitutional.[16] *Stevens* does not compel this court to reconsider the issue.

*There was sufficient evidence of a "sexual portrayal"*

We first reiterate that this issue presents a factual question, which we give the jury great deference to decide, and if there is sufficient evidence, the trial court's verdict will not be disturbed. *McNair*, 108 Nev.

---

[16]In light of our decision not to overrule *Shue*, and because we already determined in that matter that the definition of "sexual portrayal" is not overbroad, 133 Nev. at 804-07, 407 P.3d at 337-39, we reject Sena's identical argument that the statute is overbroad.

Further because Sena's conduct is virtually identical to Shue's conduct (filming children in the bathroom performing bathroom activities while they were unaware) and this court rejected Shue's argument that NRS 200.700(4) was vague on its face or as applied, Sena's identical argument that the statute is unconstitutional due to vagueness lacks merit.

at 56, 825 P.2d at 573. With that said, we conclude that there was sufficient evidence that each exhibit depicted a "sexual portrayal." Sena filmed the girls from a voyeuristic point of view, focused on the girls' genitals, had Terrie perform fellatio on him while he filmed the girls, and recorded a male voice, alleged to be Sena, breathing heavily and moaning during both videos, all of which would clearly allow a reasonable juror to find that Sena received sexual gratification from filming the girls. None of the exhibits at issue contain apparent serious literary, artistic, political, or scientific value. Additionally, the conduct in this case was virtually identical to the conduct that occurred in *Shue* that this court concluded was a sexual portrayal: surreptitious filming of a child while the child, unaware, was performing typical activities in the bathroom. *Shue*, 133 Nev. at 807, 407 P.3d at 339. Thus, the evidence in the videos demonstrates the depictions of the girls appealed to Sena's prurient interest in sex.[17] Accordingly, we conclude there was sufficient evidence to support convictions for counts 115 and 118. Further, because there was sufficient evidence to support Sena's convictions under the "sexual portrayal" portion of NRS 200.720(2), we need not

---

[17]It is not clear from our review of the record whether the still images (exhibits 79 and 81) taken from the videos were extracted by the State for the purposes of exhibition at trial or were generated by Sena himself. If they were generated by Sena, we provide the following analysis: for the images, although there obviously was no zoom-in on the girls' genitals and Terrie is not depicted in either picture, we conclude that Sena cannot avoid the fact that the pictures are stills taken from videos that clearly were filmed for the sole purpose of Sena's sexual gratification. And because Sena carefully selected frames that depict each girl in the nude from the front with her hands above her head and her breasts and/or pubic area clearly visible to the camera, that in itself indicates a focus on the girls' genitalia.

consider Sena's arguments regarding whether there was sufficient evidence to demonstrate "sexual conduct."

*Double jeopardy*

Sena challenges three of his convictions for open or gross lewdness (counts 56, 58, and 82) as violating the Double Jeopardy Clause because they punish the same conduct as three of the child abuse, neglect or endangerment via sexual abuse convictions (counts 55, 57, and 81).[18] Sena claims that open or gross lewdness is a lesser-included offense of child abuse, neglect or endangerment. Because Sena did not challenge these counts on double jeopardy grounds before the district court, he is entitled to only a plain error review on appeal. *LaChance v. State*, 130 Nev. 263, 272-73, 321 P.3d 919, 926 (2014).

The Double Jeopardy Clause protects against "multiple punishments for the same offense." *Jackson*, 128 Nev. at 604, 291 P.3d at 1278. To determine whether two statutes punish the same offense or whether there are two offenses for double jeopardy purposes, a court must "inquire[ ] whether each offense contains an element not contained in the other; if not, they are the same [offense] and double jeopardy bars additional punishment and successive prosecution." *Id.* (internal quotations omitted). Indeed, "if the elements of one offense are entirely included within the elements of a second offense, the first offense is a lesser included offense and the Double Jeopardy Clause prohibits a conviction for both offenses." *Barton v. State*, 117 Nev. 686, 692, 30 P.3d 1103, 1107 (2001), *overruled on other grounds by Rosas v. State*, 122 Nev. 1258, 147 P.3d 1101 (2006). "[T]o

_____

[18]We vacate count 57 because it is redundant of count 55, so we do not address it here.

determine whether an offense is necessarily included in the offense charged, the test is whether the offense charged cannot be committed without committing the lesser offense." *Lisby v. State*, 82 Nev. 183, 187, 414 P.2d 592, 594 (1966).

Open or gross lewdness requires the defendant to have committed an obscene, indecent, or sexually unchaste act that is glaringly noticeable or obviously objectionable and not in a secret manner, including in a manner intended to be offensive to the victim. *Berry v. State*, 125 Nev. 265, 280-82, 212 P.3d 1085, 1095-97 (2009) (discussing the elements of open or gross lewdness), *overruled on other grounds by State v. Castaneda*, 126 Nev. 478, 245 P.3d 550 (2010). As discussed above, a defendant is guilty of child abuse, neglect or endangerment via sexual abuse when the defendant causes a child to suffer unjustifiable physical pain or mental suffering as a result of abuse or neglect, which includes sexual abuse and sexual exploitation under circumstances that harm or threaten to harm the child's health or welfare. NRS 200.508.

Because Sena could have committed child abuse, neglect or endangerment via sexual abuse without committing open or gross lewdness, the open or gross lewdness offense is not a lesser-included offense. Thus, because each crime requires proving an element that is not included in the other, plain error did not occur.

*Alleged courtroom "closure"*

Lastly, Sena challenges the district court's direction to the gallery that no one was to come and go during witness testimony or during argument. Sena objected to the court's admonition to the spectators as constituting an improper closure of the courtroom. Because he waited until the 8th day of trial to object to this court admonition, he is entitled only to

SUPREME COURT
OF
NEVADA

(O) 1947A

plain error review. *United States v. Olano*, 507 U.S. 725, 733 (1993) (providing that if the defendant fails to timely object to an alleged courtroom closure and thus does not preserve the error for appellate review, the error is forfeited and the defendant is entitled only to plain error review); *see also* NRS 178.602.

The First and Sixth Amendments guarantee a right to a federal public trial, and the Fourteenth Amendment makes such rights applicable to trials at the state level as well. *Presley v. Georgia*, 558 U.S. 209, 211-12 (2010). "Trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials." *Id.* at 215. In the event that a court wants to close the courtroom to public attendance, the court must follow certain steps specified in *Waller v. Georgia*, 467 U.S. 39, 48 (1984), and adopted by this court in *Feazell v. State*, 111 Nev. 1446, 1449, 906 P.2d 727, 729 (1995).

On the other hand, "the atmosphere essential to the preservation of a fair trial—the most fundamental of all freedoms—must be maintained at all costs." *Estes v. Texas*, 381 U.S. 532, 540 (1965). Some courts have recognized that this mandate can allow for certain standing orders that regulate the actions of certain members of the public. *See, e.g., Seymour v. United States*, 373 F.2d 629, 630, 632 (5th Cir. 1967) (holding that a standing order prohibiting taking "photographs in connection with any judicial proceeding on or from the same floor of the building on which courtrooms are located" was constitutional).

In Nevada, a "judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence: (a) [t]o make the interrogation and presentation effective for the ascertainment of the truth; (b) [t]o avoid needless consumption of time; and (c) [t]o protect

witnesses from undue harassment or embarrassment." NRS 50.115(1). Additionally, the judiciary has the "inherent authority to administrate its own procedures and to manage its own affairs, meaning that the judiciary may make rules and carry out other incidental powers when reasonable and necessary for the administration of justice." *Halverson v. Hardcastle*, 123 Nev. 245, 261, 163 P.3d 428, 440 (2007) (emphasis and internal quotations omitted). "For instance, a court has inherent power to protect the dignity and decency of its proceedings and to enforce its decrees, and thus it may issue contempt orders and sanction or dismiss an action for litigation abuses." *Id.* "This court has repeatedly and consistently held that the courts of this state have the power to make their own procedural rules." *State v. Second Judicial Dist. Court (Marshall)*, 116 Nev. 953, 959, 11 P.3d 1209, 1212 (2000).

The content of the testimony in this case was extremely sensitive, detailing decades-long abuse that the victims had endured at the hands of their own family members. Witnesses testifying to such matters come to court with certain hesitancies and anxieties that might only be exacerbated by frequent comings and goings in and out of the courtroom by observers during the course of the examination. Therefore, regulating when people came and went from the courtroom "protect[ed] the dignity and decency of [the court's] proceedings." *Halverson*, 123 Nev. at 261, 163 P.3d at 440. The court never excluded people from or "closed" the courtroom; members of the public were always allowed to watch the proceedings and simply had to adhere to specific entrance and exit times. Thus, the district

court properly exercised its discretion in governing its own courtroom, and there was no structural error warranting reversal.[19]

## CONCLUSION

While Sena challenges almost all of his convictions on multiple grounds, most of those challenges are meritless. The State filed all challenged charges within the appropriate applicable statutes of limitations. There was sufficient evidence to convict Sena of conspiracy to commit sexual assault and to support the criminal convictions related to Sena's filming of Terrie's nieces while they were in the shower. Additionally, Sena's convictions did not violate the tenets of double jeopardy, and the district court did not close the courtroom during the jury trial.

We do conclude, however, that some of Sena's convictions must be vacated. Because the proper unit of prosecution for incest is one charge per victim, Sena was improperly charged with nine counts of incest, when he should only have been charged with three counts. Additionally, counts 60 and 116 are redundant of other charged possession of child pornography counts and should thus be vacated, as the State charged Sena with possessing the child pornography on the same day and on the same device without asserting distinct instances of possession. Lastly, Sena was improperly charged with two counts of child abuse, neglect or

---

[19]We do, however, emphasize that we discourage any court closure and emphasize that in the event of any court closure, the district court must follow the steps as outlined in *Waller* and *Feazell*. Moreover, any restriction on court access should be accompanied by the district court making a clear record as to the basis of its decision.

SUPREME COURT
OF
NEVADA

(O) 1947A

endangerment via sexual abuse when he should have only been charged with one count, as it is a continuing crime.

We thus affirm the judgment of conviction for all of the challenged counts except counts 27, 32, 37, 42, 47, 57, 60, 75, and 116, which are hereby vacated, and we remand this matter to the district court for further proceedings consistent with this opinion.

_____, J.
Herndon

We concur:

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

_____, J.
Pickering