142 Nev., Advance Opinion 26

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| SOPHIA MADALENA SMITH, Appellant, vs. THE STATE OF NEVADA, Respondent. | No. 88095 **FILED** APR 09 2026 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Appeal from a judgment of conviction, pursuant to jury verdict, of five counts of exploitation of an older or vulnerable person, three counts of theft, and fraudulent use of a credit or debit card. Eighth Judicial District Court, Clark County; Carli Lynn Kierny, Judge.

*Reversed and remanded.*

Nancy M. Lemcke, Public Defender, and Katherine Currie-Diamond and William M. Waters, Chief Deputy Public Defenders, Clark County, for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Austin Beaumont and Karen Mishler, Chief Deputy District Attorneys, Clark County, for Respondent.

BEFORE THE SUPREME COURT, PARRAGUIRRE, BELL, and STIGLICH, JJ.

*OPINION*

By the Court, STIGLICH, J.:

When the legislature enacts a statute criminalizing conduct, it determines the unit of prosecution for that crime. That is, the legislature

26-16360

decides whether a course of criminal conduct constitutes one offense or many offenses under that statute. The murder statutes, for instance, authorize one charge for each unauthorized killing. *See, e.g.*, NRS 200.010 (defining murder as "the unlawful killing of *a* human being (emphasis added)). Other statutes, however, allow the State to charge a defendant with only a single count of the crime, even if the crime involved multiple bad acts. *See, e.g.*, *Wilson v. State*, 121 Nev. 345, 358, 114 P.3d 285, 294 (2005) (holding that NRS 200.710, which prohibits using a child in a sexual performance, is charged at one count per child).

In this case, we are asked to determine the unit of prosecution for elder exploitation. Appellant Sophia Smith was convicted of five counts of exploitation of an older or vulnerable person against the same victim, Cornelius Hoffmans. She argues that she should have been charged only with a single count. After reviewing the relevant statutes, we conclude that although the definition of exploitation is ambiguous and is thus construed in Smith's favor by the rule of lenity, the error was not plain and thus does not warrant reversal of Smith's convictions. However, we also hold that there were several other errors at Smith's trial, such as the district court's erroneous admission of res gestae evidence and issuance of an incorrect jury instruction. These errors warrant a new trial. Accordingly, we reverse the judgment of conviction and remand to the district court for a new trial.

## FACTS & PROCEDURAL HISTORY

Cornelius Hoffmans was a retired businessman whose wife passed away in 2012. A few years later, when Hoffmans was 83 years old, he met Sophia Smith at a charity event and began contributing to her charity. The two of them started volunteering together at various charities and developed a close, but not intimate, relationship. In 2016, Hoffmans began giving money directly to Smith.

It was around this time that Hoffmans began experiencing memory issues, such as forgetting family members' birthdays. Hoffmans continued giving Smith money and assets, most notably purchasing a house on Broken Rock Drive in 2018, listing Hoffmans and Smith as joint tenants on the deed. Hoffmans later conveyed his interest in the house to Smith for no consideration. Neither Hoffmans' sons nor his financial advisors knew about this purchase until Hoffmans visited his advisors about an unrelated scam he had fallen for.

In 2019, Hoffmans and Smith entered into a domestic partnership. Having already discussed marriage, Hoffmans believed that this was the first step on the road to the altar. Although Hoffmans thought that he was seeing Smith exclusively and that the relationship would eventually become sexual, he did not know that Smith identified as a lesbian and was actively dating others. In fact, when Smith purchased her father's old home using the Broken Rock property as collateral for the loan, she identified herself as a single woman without any reference to her domestic partnership with Hoffmans. Unaware, Hoffmans continued to give money to Smith and began letting her use his credit card.

By 2020, Hoffmans' already-waning memory significantly deteriorated. Exacerbated by isolation during the COVID-19 lockdowns, Hoffmans began forgetting "simple things," like his way home. Hoffmans' sons, Jim and Chuck, unhappy with Hoffmans' relationship with Smith, filed a petition against Hoffmans and Smith to gain control over Hoffmans' trust. The civil proceedings settled, resulting in the revocation of Smith's power of attorney over Hoffmans, the annulment of their domestic partnership, and the conveyance of Smith's property purchased with Hoffmans' funds to Jim and Chuck.

The State began investigating Smith for elder exploitation before the civil litigation commenced. Smith was aware that a criminal investigation was underway, having declined to meet with law enforcement at least two times. A month before the civil proceedings settled, the State charged Smith with seven counts of exploitation of an older or vulnerable person, six counts of theft, and one count of fraudulent use of a credit or debit card, resulting in her arrest a week later. Each count of elder exploitation corresponded to a count of either theft or credit card fraud. After a jury trial, Smith was convicted of five counts of exploitation of an older or vulnerable person, three counts of theft, and one count of fraudulent use of a credit or debit card but was acquitted on the remaining counts. This appeal followed.

## DISCUSSION

On appeal, Smith argues that her convictions should be reversed for five main reasons: (1) the unit of prosecution for elder exploitation is one count per victim; (2) the district court improperly admitted res gestae evidence; (3) the district court gave a jury instruction that erroneously stated the law on exploitation; (4) counts five and seven, both elder exploitation charges, were barred by the statute of limitations; and (5) there was insufficient evidence to convict her of counts five, ten and twelve (theft), and fourteen (fraudulent use of a credit or debit card).[1] We address each contention in turn.

*The unit of prosecution for elder exploitation is one count per victim*

Smith contends that the State should have charged her with only one count of elder exploitation. She claims that the statute that defines

---

[1]We decline to address the rest of Smith's arguments given our reversal of the judgment of conviction.

"exploitation" for purposes of the charged offenses does so in such a way that one count encapsulates every act of exploitation done to a single victim. In other words, Smith argues that even if she committed multiple distinct acts of exploitation against Hoffmans, the State could only have charged her with a single count of elder exploitation.

As Smith did not raise this argument below, we review this claim for plain error. *Jeremias v. State*, 134 Nev. 46, 50, 412 P.3d 43, 48 (2018). Under that standard, we will correct a forfeited error only when an appellant demonstrates that "(1) there was an 'error,'" (2) said error was "clear under current law from a casual inspection of the record," "and (3) the error affected the defendant's substantial rights." *Id.*

When the legislature decides to criminalize an act or series of acts, it divides up a course of criminal "conduct into discrete legal offense units." *See* Akhil Reed Amar, *Double Jeopardy Law Made Simple*, 106 Yale L.J. 1807, 1818 (1997). In other words, the legislature determines whether a defendant's actions constitute one or multiple counts of a given offense. *Id.* In bringing a unit-of-prosecution claim, a defendant argues that only a single count of a crime should have been charged based on the legislature's intent. *See Castaneda v. State*, 132 Nev. 434, 441, 373 P.3d 108, 113 (2016) (contemplating the unit of prosecution for Nevada's child pornography statutes). To discern the legislature's intent in drafting a criminal statute, we begin with the plain statutory text. *Wilson*, 121 Nev. at 356, 114 P.3d at 293. If, after our review, the plain text does not unambiguously reveal the legislature's intent, then "we turn to other legitimate tools of statutory interpretation." *Castaneda*, 132 Nev. at 439, 373 P.3d at 111. If we find that the statute's meaning is still ambiguous after utilizing extrinsic sources, then we apply the rule of lenity and construe the statute in the defendant's favor. *Id.* at 442-43, 373 P.3d at 114.

We start with the statutory text. NRS 200.5099(3) prohibits the exploitation of "an older person or a vulnerable person." NRS 200.5092(3), in turn, defines "exploitation" as

> *any act* taken by a person who has the trust and confidence of an older person or a vulnerable person or *any use* of the power of attorney or guardianship of an older person or a vulnerable person to:
>
> (a) *Obtain control*, through deception, intimidation or undue influence, over the older person's or vulnerable person's money, assets or property with the intention of permanently depriving the older person or vulnerable person of the ownership, use, benefit or possession of his or her money, assets or property; or
>
> (b) *Convert* money, assets or property of the older person or vulnerable person with the intention of permanently depriving the older person or vulnerable person of the ownership, use, benefit or possession of his or her money, assets or property.

(Emphases added.)

The statute's plain text clearly defines exploitation as the act of obtaining control of an older or vulnerable person's property through "deception, intimidation or undue influence," as well as the act of converting the older or vulnerable person's assets. What is less clear is whether each independent act of obtaining control of or converting an older or vulnerable person's property warrants its own charge, or whether one count of exploitation encapsulates every such act involving the same older or vulnerable person. This is because the definition uses the word "any," which could mean "(1) one; (2) one, some, or all regardless of quantity; (3) great, unmeasured, or unlimited in amount; (4) one or more; and (5) all." *Castaneda*, 132 Nev. at 438, 373 P.3d at 111 (citation modified).

The statutory text does not dispositively resolve the question. NRS 200.5092(3) uses the phrases "an older person or a vulnerable person" and "the older person or vulnerable person," which suggests that the focus is the older or vulnerable person, not the act of exploitation, but that is far from conclusive proof of the legislature's intent. Thus, it is unclear from the plain text whether NRS 200.5092(3)'s definition encapsulates each independent act of obtaining control or converting property or every act, together.

NRS 200.5099(3)(a), the penalty statute, also does not resolve this question. The statute authorizes the State to aggregate the "monetary value of all of the money, assets and property of the older person or vulnerable person which have been obtained or used, or both, . . . for the purpose of imposing punishment" and establishes three tiers of punishment depending on the individual or aggregated value: "less than $650, . . . at least $650, but less than $5,000," and "$5,000 or more." *Id.* Such aggregation language suggests that there can be multiple acts constituting exploitation to aggregate. *Cf.* NRS 205.0834 (allowing the State to aggregate multiple thefts into a greater offense). Moreover, the statute is permissive: it reads that the State "may . . . combine[ ]" the value of the assets taken but does not require it to do so. NRS 200.5099(3). Beyond that premise, however, NRS 200.5099(3) could be read to support either interpretation of NRS 200.5092(3). NRS 200.5099(3)'s aggregation language could, as the State argues, indicate that the unit of prosecution for elder exploitation is each separate act of exploitation and that multiple acts of exploitation could be consolidated into a single count with a higher penalty.

But such aggregation language could still work if NRS 200.5092(3)'s definition of exploitation permitted the State to charge only a

single count that encapsulated every single exploitative act. In such a scheme, the State would be allowed, but not required, to aggregate amounts taken in various acts of exploitation for a harsher punishment. This is because NRS 200.5099(3) is also ambiguous. The penalty for the first time offense of elder exploitation is determined by "the value of *any* money, assets and property obtained or used." NRS 200.5099(3)(a) (emphasis added). "[A]ny," as has been discussed, could mean a number of things, including one. *Cf. Castaneda*, 132 Nev. at 438, 373 P.3d at 111. Thus, if NRS 200.5092(3)'s definition of exploitation was interpreted to mean that a single exploitation charge includes every exploitative act, NRS 200.5099(3)(a) could be read to permit the State to charge the defendant with only one of those exploitative acts. In such a scenario, the purpose of NRS 200.5099(3)'s aggregation language would be to clarify that the State is allowed to combine as many (or as few) of the exploitative acts as it desires to impose a higher punishment within that single exploitation charge. Of course, the State is entitled to exercise its prosecutorial discretion in choosing whether to aggregate or not. *Cf. Globensky v. State*, 96 Nev. 113, 117, 605 P.2d 215, 218 (1980) (holding that choosing whether to charge someone or not falls within a prosecutor's discretion). Thus, counter to the State's position, interpreting exploitation to require a single count per victim would not render the aggregation language superfluous.

As both the definition statute and the penalty statute are ambiguous, we turn next "to other legitimate tools of statutory interpretation." *Castaneda*, 132 Nev. at 439, 373 P.3d at 111. Our approach in *Castaneda* is instructive: there, we examined the relevant legislative history and analogous cases before applying the rule of lenity as a last resort. *Id.* at 439-44, 373 P.3d at 111-15. Unfortunately, as in *Castaneda*,

Supreme Court
of
Nevada

(O) 1947A

8

neither the legislative history nor caselaw sheds any light on the legislature's intent here.

NRS 200.5092 was passed as part of a bill that created Nevada's statutory scheme for addressing elder abuse, neglect, and exploitation. 1981 Nev. Stat., ch. 611, § 3, at 1334. "Exploitation" was originally defined as the "wrongful use of an older person or his money or property to the advantage of another if the older person is unable to care for himself." *Id.* In 1995, the Nevada Legislature amended the definition of exploitation to include the "any act" language present in the current iteration of NRS 200.5092(3). 1995 Nev. Stat., ch. 607, § 5, at 2250. In doing so, the proponents of the bill sought to "clarify the crime[ ] of . . . exploitation against elders, and include penalties for abuse of powers of attorneys, and guardianships." Hearing on A.B. 585 Before the Assemb. Judiciary Comm., 68th Leg. (Nev., May 31, 1995).[2]

The definition of exploitation was again substantively updated in 2003, with the addition of subsection (b), which defined converting the older person's assets as exploitation. 2003 Nev. Stat., ch. 78, § 1, at 491. Similar to the 1995 bill, the legislative discussions show that the 2003 bill was enacted to expand the definition of exploitation to encompass more conduct. *See, e.g.*, Hearing on A.B. 126 Before the Sen. Judiciary Comm., 72nd Leg. (Nev., Aug. 28, 2003). Although we recognize the legislature's intent to expand the definition of exploitation to include more conduct over the years, the scope of the exploitation definition has little bearing on

---

[2]A.B. 585, the 1995 bill, also added the aggregation language into NRS 200.5099, but without any indication as to what the charging unit for exploitation was. 1995 Nev. Stat., ch. 607, § 9, at 2253.

whether the legislature intended such conduct to be charged as one count or multiple counts.

Our other cases discussing unit-of-prosecution challenges are also unhelpful in answering the question before us now. Smith points to caselaw discussing child abuse as indicative that the unit of prosecution for elder exploitation is one count per victim.[3] *See Rimer v. State*, 131 Nev. 307, 351 P.3d 697 (2015); *Sena v. State*, 138 Nev. 310, 510 P.3d 731 (2022). Although we have interpreted the elder abuse and neglect statutes in tandem with Nevada's child abuse and neglect statutes, *Vallery v. State*, 118 Nev. 357, 367, 46 P.3d 66, 74 (2002), we are unpersuaded that our child abuse jurisprudence is of any assistance here. In *Vallery*, we applied our caselaw interpreting the child abuse and neglect statutes to the "identical or substantially similar" language of the elder abuse and neglect statutes. *Id.* at 370, 46 P.3d at 75. Here, however, there is no analogous statutory text for us to interpret. NRS 200.508 prohibits only the sexual exploitation of children, and the definition of child sexual exploitation in NRS 432B.110 is markedly different from both NRS 200.5092(3) and NRS 200.5099(3). As a unit of prosecution analysis is an exercise in statutory interpretation, *Wilson*, 121 Nev. at 356, 114 P.3d at 293, other unit-of-prosecution cases are helpful only to the extent that they implicate similar statutes or words.

_____

[3]Relying on *Shue v. State*, 133 Nev. 798, 407 P.3d 332 (2017), Smith also argues that there is a presumption that the unit of prosecution for crimes involving another person is one count per victim. Smith reads *Shue* far too broadly. In *Shue*, we read NRS 200.710(2) to establish a unit of prosecution as one count per minor who was "the subject of a sexual portrayal in a performance." *Id.* at 802, 407 P.3d at 336. Our interpretation of a specific statute's text should not be understood as creating a general rule for every other statute.

Neither *Rimer* nor *Sena* do so and thus are inconclusive as to what the unit of prosecution is in this case.

As in *Castaneda*, our review of the statutory text, legislative history, and caselaw has failed to provide a conclusive answer as to the unit of prosecution for elder exploitation. 132 Nev. at 443, 373 P.3d at 114. We thus, consistent with the rule of lenity, construe this statute in favor of Smith and hold that Smith's conduct constituted only a single violation of NRS 200.5099(3), as the unit of prosecution is one count per victim. *See id.* Although we conclude that it was therefore error for Smith to be charged—and convicted—of multiple counts of elder exploitation, we are unable to say that the error was plain. "For an error to be plain, it must, at a minimum, be clear under current law." *Gaxiola v. State*, 121 Nev. 638, 648, 119 P.3d 1225, 1232 (2005) (citation modified). Because the statutory scheme in this case is ambiguous and we are thus required to interpret the statute in reliance on the rule of lenity, we cannot say that the unit of prosecution for elder exploitation was "clear under current law." *See id.* Accordingly, we decline to reverse Smith's convictions on this ground.[4]

*The district court erred in admitting evidence of Smith's charity as res gestae*

Smith argues that the district court erred in admitting other acts evidence related to her charity as res gestae. Smith allegedly used her charity to fund her personal lifestyle, and the district court admitted this evidence under the NRS 48.035(3) res gestae exception. The State argues that there was no error and that any error would be harmless, as the district court issued a limiting instruction.

---

[4]Because we are reversing Smith's convictions on other grounds, in a retrial the State may only proceed with a single count of elder exploitation consistent with our holding herein.

Except in narrow circumstances not present here, evidence of other acts is not admissible to prove the character of a person to show they acted in conformity therewith. NRS 48.045(2). We limit the introduction of this evidence because of the real concern "that the jury will be unduly influenced by the evidence, and thus convict the accused because it believes the accused is a bad person." *Tavares v. State*, 117 Nev. 725, 730, 30 P.3d 1128, 1131 (2001). Nevertheless, other act evidence is admitted to prove something other than character when it is offered as res gestae evidence. NRS 48.035(3) allows for the admission of "[e]vidence of another act or crime which is so closely related to" the charged crimes "that an ordinary witness cannot describe the act in controversy or the crime charged without referring to the other act or crime." If such evidence is admitted, then an interested party is entitled to "a cautionary [jury] instruction" upon request. *Id.* The res gestae "basis for admissibility is extremely narrow," *Weber v. State*, 121 Nev. 554, 574, 119 P.3d 107, 121 (2005), *overruled on other grounds by Farmer v. State*, 133 Nev. 693, 698, 405 P.3d 114, 120 (2017), meaning that the uncharged act may only be admitted if it is part of "the same temporal and physical circumstances" as the charged acts, *Alfaro v. State*, 139 Nev. 216, 227, 534 P.3d 138, 150 (2023). We review the admission of evidence for abuse of discretion, *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008), and reverse and remand for a new trial if the erroneous admission of evidence was not harmless, *Carr v. State*, 96 Nev. 238, 240, 607 P.2d 114, 116 (1980). *See also Alfaro*, 139 Nev. at 228, 534 P.3d at 150-51 (applying harmless error review to improperly admitted res gestae evidence). An error is harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Tavares*, 117 Nev. at 732, 30 P.3d at 1132 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

Here, the State introduced evidence that Smith ran a charity to explain how she met Hoffmans. This is precisely the kind of res gestae evidence that NRS 48.035(3) would permit. However, the State then presented the jury with evidence that Smith engaged in misconduct with her charity. The State showed the jury that Smith did not comply with nonprofit formalities and that she used charitable funds for noncharitable purposes such as gambling at a casino. In closing, the State described the charity as "another one of [Smith's] checking accounts." Apart from the alleged misconduct occurring contemporaneously with her exploitation of Hoffmans, there is no relationship between the misconduct and the taking of money from Hoffmans. Because Smith's exploitation of Hoffmans was certainly describable without reference to her potentially questionable actions with respect to her charity, we are unpersuaded that this evidence falls within the narrow res gestae route to admission.

The State argues that, as it amended its indictment for counts eight, ten, and twelve—three of the six theft counts—to reflect that Smith took the money in those counts by misrepresenting the nature of her charity to Hoffmans, the evidence of Smith's allegedly fraudulent use of charitable funds was thus inseparable from the charged conduct. The record belies that assertion. Count eight dealt with $60,000 in checks that Smith received between July 25 and August 9, 2019. Count ten dealt with $101,908.64 in checks received between March 24 and December 18, 2020. Count twelve involved $70,000 in checks received by Smith between March 8 and March 20, 2021. All of these checks were written to Smith in her personal capacity. Even if Smith had obtained these funds by representing to Hoffmans that the money would support her charity, what Smith did with other charitable donations was not part of "the same temporal and physical circumstances" as her charged acts and was thus

SUPREME COURT
OF
NEVADA

13

(O) 1947A

inadmissible under NRS 48.035(3). *See Alfaro*, 139 Nev. at 227, 534 P.3d at 150.

Compounding the harm of this improperly admitted evidence was the district court's erroneous limiting instruction. A correct limiting instruction informs the jury that the res gestae evidence was admitted only to provide context for the alleged crimes. *See* NRS 48.035(3) (requiring a limiting instruction "explaining the reason for its admission," which is to provide context, on a party's request); *see also Rojas v. People*, 504 P.3d 296, 312 n.2 (Colo. 2022) (Boatright, C.J., concurring in judgment) (endorsing res gestae limiting instructions to "alert[ ] the jury to the limited, contextual purpose for which the evidence is admitted"). Instead, the district court here instructed the jury to consider this supposedly res gestae evidence solely as other bad act evidence against Smith. The district court instructed the jury that it was about to "hear evidence that [Smith] potentially used finances from [her charity] for her personal purposes" and that such evidence was "admitted to explain how Mr. Hoffmans' charitable contributions potentially benefitted [Smith] and the potential exploitation of Mr. Hoffmans, but it is not to be used for any other purpose." In other words, the district court told the jury to consider evidence of Smith's other bad acts as propensity evidence, something clearly prohibited by NRS 48.045. This too was error by the district court.

We conclude that these two errors were not harmless. The effect of allowing the State to bring up Smith's alleged charitable malfeasance at trial was substantial. Despite not being put on trial for these acts, the State was allowed to inform the jury that Smith was using charitable funds on casino gambling. The State brought up Smith's charitable misdeeds multiple times at trial, culminating with the prosecutor's assertion in closing that Smith "treated [the charity] like

Supreme Court
OF
Nevada

(O) 1947A

14

another one of her checking accounts," further compounding the error. And given the erroneous limiting instruction, the jury was specifically informed to use Smith's charitable misdeeds as propensity evidence. Given the magnitude of the error, made worse by the erroneous limiting instruction and worse than worse by the extent to which the evidence was referenced at trial, we conclude the improper admission of this evidence was not harmless. Accordingly, we reverse the judgment of conviction and remand the matter to the district court for a new trial. Although we hold that a new trial is warranted on this basis alone, we address several remaining claims of error.

*The district court issued an erroneous jury instruction*

Smith contends that the district court erroneously instructed the jury and impermissibly lowered the State's burden of proof with respect to the exploitation charges when it issued Instruction No. 30. As Smith failed to object at trial, we review the issuance of Instruction No. 30 for plain error. *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003). Whether an instruction accurately states the law is a legal question that we review de novo. *Nay v. State*, 123 Nev. 326, 330, 167 P.3d 430, 433 (2007).

In criminal cases, district courts "shall not direct the jury to find a presumed fact against the accused." NRS 47.230(2). A presumption is mandatory, and thus prohibited, if it instructs the jury that "it must infer the presumed facts if the State proves certain predicate facts." *Thompson v. State*, 108 Nev. 749, 754, 838 P.2d 452, 455 (1992) (citation modified), *overruled on other grounds by Collman v. State*, 116 Nev. 687, 7 P.3d 426 (2000). In contrast, district courts are permitted to issue permissive presumptions, instructions that suggest without compelling "a possible conclusion to be drawn if the State proves predicate facts." *Id.* (citation modified). We have held that "an instruction by a trial judge that under

certain circumstances a particular fact 'is presumed' is" equivalent to a mandatory instruction. *Brackeen v. State*, 104 Nev. 547, 551, 763 P.2d 59, 62 (1988).

Instruction No. 30 reads, in relevant part, as follows:

A presumption of undue influence *arises* when a fiduciary relationship exists and when the fiduciary benefits from the questioned transaction. A fiduciary relationship arises from the existence of a marriage or domestic partnership.

A presumption of undue influence likewise *arises* when a transfer instrument is made and the Jury finds that the transfer was the product of fraud, duress, or under influence.

. . . .

A presumption of influence also applies when the transfer is to a transferee who is (a) the person who drafted the transfer instrument; (b) a caregiver of the transferor who is a dependent adult; (c) a person who materially participated in formulating the dispositive provisions of the transfer instrument or paid for the drafting of the transfer instrument; or (d) a person who is related to, affiliated with, or subordinate to any person previously described.

(Emphases added.)

We hold that Instruction No. 30 was a mandatory presumption prohibited by NRS 47.230(2).[5] The jury was twice instructed that a

---

[5]We note that Instruction No. 30 also included the following phrase: "[t]he law declares that the jury may regard the basic facts as sufficient evidence of the presumed facts but does not require it to do so." This phrase does not transform an otherwise mandatory presumption into a permissive presumption. As the district court submitted a presumed fact to the jury, NRS 47.230(3) required the district court to issue this phrase as part of the jury instruction. But NRS 47.230(3) only applies "[w]henever the existence of a presumed fact against the accused is submitted to the jury." As NRS

SUPREME COURT
OF
NEVADA

(O) 1947A

16

presumption of undue influence "arises" upon a finding of the predicate facts. The jury was also instructed that a presumption of undue influence "applies" if it were to find certain other facts. The jury was not instructed that it *may* presume undue influence; rather, it was informed that the presumption springs into existence upon finding predicate facts. This amounted to instructing it to accept the presumption. In *Brackeen*, we explained that instructing a jury that a presumption exists was "functionally equivalent" to an instruction that the jury "must assume" a fact. 104 Nev. at 551, 763 P.2d at 62 (quoting, in second phrase, *Marshall v. State*, 95 Nev. 802, 803, 603 P.2d 283, 284 (1979), *holding modified by Thompson v. State*, 108 Nev. 749, 838 P.2d 452 (1992)). As Instruction No. 30 used the same impermissible language as in *Brackeen*, we conclude that the district court erred in issuing the instruction. This error was plain, as we have directly addressed the propriety of similar instructions in *Brackeen*, and it affected Smith's substantial rights by allowing the jury to presume an element of the exploitation offenses.

Not only did Instruction No. 30 contain prohibited mandatory presumptions, but it also erroneously imported the civil undue influence burden-shifting paradigm into criminal proceedings. In the realm of wills and estates at common law, if there is a fiduciary relationship between a transferor and a transferee, and the transferee benefits from the transfer, then "[a] presumption of undue influence arises." *In re Jane Tiffany Living*

___

47.230(2) prohibits district courts from submitting mandatory presumptions to the jury, the inclusion of the NRS 47.230(3) required phrase is better understood as a requirement accompanying permissive presumptions, not as a curative instruction that turns a mandatory presumption into a permissive one. Thus, the phrase here does not redeem Instruction No. 30 as it is otherwise mandatory.

*Tr. 2001*, 124 Nev. 74, 78, 177 P.3d 1060, 1062 (2008). The transferee then has the burden of showing by "clear and satisfactory evidence that the transaction was fundamentally fair and free of professional overreaching." *Id.* at 79-80, 177 P.3d at 1063 (citation modified). NRS 155.097(3) establishes a statutory burden-shifting scheme: transfers made to transferees who fall within one of four enumerated categories are presumptively void, but the transferee may rebut the presumption by presenting "clear and convincing evidence that the donative transfer was not the product of fraud, duress or undue influence."

The importation of this civil burden-shifting scheme into Instruction No. 30 was error. "Every person charged with the commission of a crime shall be presumed innocent until the contrary is proved by competent evidence beyond a reasonable doubt . . . ." NRS 175.201. Applying the civil undue influence burden-shifting scheme into criminal trials would vitiate this presumption of innocence by allowing the jury to presume a defendant guilty of a crime upon a prima facie showing of undue influence by a quantum of proof less than beyond a reasonable doubt.[6] The district court thus erred in providing Instruction No. 30.

As Instruction No. 30 was plainly erroneous in two ways, we conclude that the district court's erroneous issuance of Instruction No. 30 constitutes an additional basis for reversal of the elder exploitation charges.

---

[6]It appears as if this court has not addressed the quantum of proof necessary to establish the existence of a fiduciary relationship before the presumption can apply. In breach of fiduciary duty cases, the standard is preponderance of the evidence, *Powers v. United Servs. Auto. Ass'n*, 115 Nev. 38, 42, 979 P.2d 1286, 1288 (1999), but the standard to rebut the presumption is clear and convincing evidence, *In re Jane Tiffany*, 124 Nev. at 79, 177 P.3d at 1063. Either way, that is a lower burden than the criminal "beyond a reasonable doubt" standard.

*The statute of limitations does not prevent the State from prosecuting Smith for the Broken Rock property*

Smith argues that the statute of limitations expired on count five, the elder exploitation charge related to the purchase of the Broken Rock property.[7] The relevant statute of limitations, NRS 171.085(4), requires the State to file elder exploitation charges within three years of the date of the offense. The State argued below, and the district court found, that Smith's relevant exploitative conduct occurred in secret, and thus the statute of limitations was tolled pursuant to NRS 171.095(1)(a). On appeal, Smith asserts that the district court erred in finding that Smith secretly committed the acts constituting count five.

In light of our unit-of-prosecution determination, we need not determine whether the tolling statute applies. Construing this ambiguous statute to have a unit of prosecution of one count per victim, elder exploitation is a continuous offense, as it encapsulates all of the defendant's exploitative conduct. And the statute of limitations for continuing offenses begins to run upon completion of the last act comprising the continuing offense. *Rimer*, 131 Nev. at 313, 351 P.3d at 703. Thus, with respect to exploitation, the statute of limitations does not start to run until the final exploitative act occurs, allowing the State to include conduct that would

---

[7]Smith also asserts that count seven (exploitation of an older or vulnerable person) was barred by the statute of limitations. The statute of limitations for count seven expired after the State filed the criminal complaint but before the grand jury returned the indictment. Since the State prosecuted Smith based on the indictment, Smith claims that the State could not proceed with count seven after the complaint was dismissed. NRS 171.085 requires that an indictment "be found, or an information or complaint filed" within the relevant time period. The plain text clearly states that filing a complaint satisfies the statute of limitations. As the State did so here, it timely charged Smith with count seven.

otherwise be barred by the statute of limitations in that single charge. *Id.* at 318, 351 P.3d at 706. For the purposes of this case, if the State pursues a new trial against Smith, it may include the conduct comprising count five in a single elder exploitation charge regardless of whether it was committed in secret.

*There was sufficient evidence of Smith's crimes*

Smith contends that there was insufficient evidence to convict her on counts five (elder exploitation), ten and twelve (theft), and fourteen (fraudulent use of a credit or debit card). In addressing this claim, we look at "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, after viewing the evidence in the light most favorable to the prosecution." *Jackson v. State*, 117 Nev. 116, 122, 17 P.3d 998, 1002 (2001) (citation modified).

Count five is an exploitation charge against Smith for the purchase of the Broken Rock property. Preliminarily, as we hold that the unit of prosecution allows only a single exploitation charge against Smith, the question here is transmuted slightly to entail whether there was sufficient evidence that this transaction, as part of a single charge, was the result of Smith's deception, intimidation, or undue influence. We conclude that there was. Hoffmans stated that he thought that he and Smith were in a relationship and that the relationship would eventually turn sexual. Hoffmans specifically mentioned that he bought Broken Rock for Smith because of this relationship and that he transferred sole title to Smith after they entered into a domestic partnership, which he understood to be a promise of marriage from Smith. A reasonable juror could have concluded

that Smith deceived Hoffmans into purchasing Broken Rock for her through the false promise of marriage and a sexual relationship.[8]

Smith also argues that there was insufficient evidence to convict her of counts ten, twelve, and fourteen. Those convictions occurred while Smith was in a domestic partnership with Hoffmans, and Smith contends that this rendered the money Smith took community property that she was entitled to take. We disagree. All of Hoffmans' property before the domestic partnership remained his separate property, *see* NRS 123.130, unless Smith showed that her "labor, skill, and industry actually contributed to the increase in value of [Hoffmans'] separate property," *Smith v. Smith*, 94 Nev. 249, 251, 578 P.2d 319, 320 (1978). Smith offers no evidence that she did anything to increase the value of Hoffmans' accounts, so we conclude that there was sufficient evidence to convict her on these counts.

## CONCLUSION

Today, we hold that the correct unit of prosecution for elder exploitation is one count per victim. Even though Smith was incorrectly convicted of five counts of exploitation of an older or vulnerable person, we do not reverse the judgment of conviction on this ground because we do not believe that this error was plain. However, we discern several other errors that warrant reversal, most notably the improper admission of res gestae evidence. The district court abused its discretion in admitting evidence of Smith's misuse of charitable funds under the res gestae exception and

---

[8]We also hold that Smith's acquittal on count six, the theft offense related to Broken Rock, does not mandate a different result. *See Greene v. State*, 113 Nev. 157, 173, 931 P.2d 54, 64 (1997) (permitting inconsistent verdicts), *overruled in part on other grounds by Byford v. State*, 116 Nev. 215, 235, 994 P.2d 700, 713 (2000).

Supreme Court
OF
Nevada

(O) 1947A

compounded the error by issuing an incorrect limiting instruction. We hold that this error was not harmless and merits reversal. Accordingly, we reverse the judgment of conviction on all counts and remand to the district court for a new trial.

_____, J.
Stiglich

We concur:

_____, J.
Parraguirre

_____, J.
Bell