142 Nev., Advance Opinion 37

IN THE SUPREME COURT OF THE STATE OF NEVADA

MAURICE ROBINSON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.



No. 89015

**FILED**

MAY 21 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of 15 counts of exploitation of an older or vulnerable person, 15 counts of theft, and 1 count of neglect of an older or vulnerable person. Eighth Judicial District Court, Clark County; Christy Craig, Judge.

*Affirmed in part, vacated in part, and remanded.*

Nancy M. Lemcke, Public Defender, and Shana S. Brouwers and William M. Waters, Chief Deputy Public Defenders, Clark County,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Austin Beaumont and Shanon Clowers, Chief Deputy District Attorneys, Clark County,
for Respondent.

_____

BEFORE THE SUPREME COURT, STIGLICH, CADISH, and LEE, JJ.

*OPINION*

By the Court, STIGLICH, J.:

Appellant Maurice Robinson was Lawrence Turner's caretaker for many years. Over several months, Robinson removed a total of $76,880

26-23192

from Turner's bank account, in 120 transactions, and used the money to fund Robinson's gambling habits. He further failed to properly care for Turner's health. The State charged Robinson with 15 counts of elder exploitation; 15 counts of theft, aggregating the total amount stolen during each month Robinson accessed Turner's account; and 1 count of elder abuse. The jury ultimately convicted Robinson on all counts. On appeal, Robinson argues that, on these facts, charging him with multiple counts of elder exploitation and theft was improper.

In our recent opinion, *Smith v. State*, 142 Nev., Adv. Op. 26, 587 P.3d 251, 264 (2026), we held that the unit of prosecution for elder exploitation is 1 count per victim; therefore, we vacate 14 of the 15 counts of elder exploitation. Further, with respect to the theft counts, NRS 205.0834 allows the State to aggregate the value of property stolen through acts "committed pursuant to a scheme or continuing course of conduct" in determining what grade of theft to charge. Here, Robinson committed the thefts in only a single scheme or course of conduct, and it was therefore improper to convict him of 15 separate counts of theft. We therefore vacate 14 of the 15 counts of theft. As Robinson's other appellate arguments do not result in reversal, we affirm in part, vacate in part, and remand.

## FACTS AND PROCEDURAL HISTORY

Robinson lived with Turner, sharing a single trailer. His caretaking duties involved helping groom Turner, giving Turner his medication, and paying Turner's bills using funds from Turner's account. Two months before the events giving rise to this case, Turner was hospitalized with an infection. After returning home, Turner received home visits from nurses to assist his recovery. During their visits, the nurses instructed Robinson how to better care for Turner.

A few weeks after the last home visit, Robinson called 911 to report "a wound or sore bleeding—that was bleeding from a non-dangerous body part." Paramedics arrived at the trailer and could smell a "foul odor distinctive [of] infection" from outside. The paramedics entered the trailer and found Turner sitting in a plastic lawn chair in the bathtub. Turner was slumped over to the left side of the lawn chair; part of his shoulder had dug into the chair and the armrest and both arms grasped the left armrest. Turner was "effectively in the fetal position" and had his ankles wrapped around the chair legs to keep him from falling out of the chair.

Turner was covered in fecal matter—some of which was old and dried, some of which was fresh and wet—from head to toe. One of the paramedics noticed a "significant" skin sore on Turner's leg, measuring roughly three by four inches, that was missing a substantial amount of flesh and oozing pus and blood. The paramedics identified this sore as the source of the infectious odor. The paramedics cut off Turner's clothes, revealing several red sores on the parts of his body that were touching the chair. Those sores were consistent with long-term contact with a "harder surface."

After extricating Turner from the chair—a difficult endeavor as Turner's lower limbs were contracted and tightened from lack of movement—the paramedics placed Turner in an ambulance and took him to a hospital. Doctors diagnosed the wound as a life-threatening stage-four ulcer, meaning that Turner's bone and ligaments were visible and the wound had a high risk of infection. Although surgery was a possible treatment option, the doctors determined that Turner was too malnourished for surgery.

After Turner's admission to the hospital, Robinson discussed Turner's living situation with police. Robinson told them that he was

SUPREME COURT
OF
NEVADA

(O) 1947A

Turner's caretaker, that Turner received about $7,000 per month from retirement and Social Security benefits, and that Robinson paid about $1,400 per month for Turner's living expenses. Suspicious about the difference between Turner's income and his expenses, law enforcement reviewed Turner's bank records, as well as Robinson's casino and gambling history. For about 15 months, there were 96 ATM withdrawals from Turner's bank account totaling $46,060. There were also 24 checks written to Robinson totaling $30,820. Altogether, the State identified 120 suspect transactions totaling $76,880. Over the corresponding time period, Robinson gambled on 358 days.

The State concluded that Robinson was unlawfully taking Turner's money to fund his gambling habits and charged Robinson with 15 counts of elder exploitation and theft. Each count corresponded to the month in which Robinson's criminal activity occurred. The State also charged Robinson with 1 count of elder neglect. After trial, the jury convicted Robinson on all counts, and he was sentenced to an aggregate sentence of 96 to 240 months in prison. Robinson timely appealed.

## DISCUSSION

On appeal, Robinson raises four issues. First, Robinson challenges his elder-exploitation convictions, arguing that the correct unit of prosecution for elder exploitation is 1 count per victim. Second, Robinson argues that the State may not aggregate the theft charges against him as it did. Third, Robinson argues that the district court failed to properly instruct the jury as to elder neglect. Fourth, Robinson argues that the State failed to present sufficient evidence on every charge. We address each issue in turn.

*The unit of prosecution for elder exploitation is 1 count per victim*

Robinson argues that the unit of prosecution for elder exploitation is 1 count per victim. He therefore argues that he should have only been convicted of 1 count, as opposed to 15 counts, of elder exploitation.

Robinson did not raise this issue at trial, and thus we review for plain error. *Jeremias v. State*, 134 Nev. 46, 47, 412 P.3d 43, 46 (2018). A finding of plain error requires error that was "clear under current law from a casual inspection of the record" and that affected the defendant's substantial rights. *Id.* at 50, 412 P.3d at 48. We determine whether an error is plain based on the state of the law at the time of appellate review. *Henderson v. United States*, 568 U.S. 266, 279 (2013); *accord Flowers v. State*, 136 Nev. 1, 8, 456 P.3d 1037, 1045 (2020) (providing that whether an error is plain is determined "by reference to the law as of the time of appeal" (citation modified)).

Criminal statutes divide up a course of criminal "conduct into discrete legal offense units." *See* Akhil Reed Amar, *Double Jeopardy Law Made Simple*, 106 Yale L.J. 1807, 1818 (1997). A defendant bringing a unit of prosecution challenge argues that his or her sentence is inconsistent with the statute's "legal offense unit"; that is, that the defendant should have been convicted of only a single offense, as opposed to multiple offenses. *See id.*

We recently addressed this issue in *Smith v. State*, 142 Nev., Adv. Op. 26, 587 P.3d 251, 264 (2026), and held that the unit of prosecution for elder exploitation is 1 count per victim.[1] We also held in *Smith* that the

---

[1]We note that a defendant may be charged with subsequent counts of elder exploitation based on post-conviction conduct, even if that exploitative conduct is committed against the same victim. *See State v. Barlow's, Inc.*,

error affected Smith's substantial rights because Smith was thus convicted of more counts than the crime permitted. *Id.* Nevertheless, given the ambiguity of the offense statutes (NRS 200.5099 and NRS 200.5092), we held that the error was not clear and declined to reverse the conviction on this ground. *Id.* Here, however, the error is now clear given our opinion in *Smith. See Henderson,* 568 U.S. at 279 (providing that "it is enough that an error be 'plain' at the time of appellate consideration" (citation modified)). We therefore conclude that Robinson has shown plain error, rendering the conviction on 14 of the 15 counts of elder exploitation infirm. We therefore vacate in part.

*The State was allowed to charge Robinson with only a single aggregated theft count*

Robinson also challenges the State's authority to charge him with 15 counts of theft. Although couched as a unit-of-prosecution claim, Robinson argues that the State improperly charged 120 alleged acts as 15 counts of theft, contrary to the terms of the theft-aggregation statute. Robinson argues that the allegations should have permitted only 1 count of theft of the aggregated amount or 120 counts, 1 count for each taking. The State argues that it was permissible to separate its allegations by month and charge in 1 count the acts alleged to have taken place within each month. The State argued that each month constituted a discrete course of conduct because Turner would receive funds at the beginning of the month and Robinson would draw down the account value to nearly nothing over

729 P.2d 433, 436 (Idaho Ct. App. 1986) (holding that a previous prosecution of a continuing crime "is not a bar to prosecution for offenses thereafter, as these are new violations of the law").

the course of the month. The process would then repeat when Turner received the next month's funds.

As Robinson failed to preserve this argument below, we review for plain error. *Jeremias*, 134 Nev. at 47, 412 P.3d at 46. Robinson presents a question of statutory interpretation. In interpreting a statute, this court first looks to the plain text of the statute, *Rodriguez v. State*, 133 Nev. 905, 907, 407 P.3d 771, 773 (2017), giving words "their usual and natural meaning," *Wyman v. State*, 125 Nev. 592, 607, 217 P.3d 572, 583 (2009) (citation modified). The punishment for theft depends on the value of the property. NRS 205.0835. When Robinson committed his crimes, a theft of less than $650 was a misdemeanor, a theft of a value equal to or more than $650 but less than $3,500 was a category C felony, and a theft valued at $3,500 or more was a category B felony. 2011 Nev. Stat., ch. 41, § 10, at 162. To better reflect the nature of certain theft crimes, NRS 205.0834 permits the State to aggregate multiple thefts committed "pursuant to a scheme or continuing course of conduct" into a single charge.

We have not yet defined "scheme" or "course of conduct" in NRS 205.0834. Other courts, when interpreting these terms, have held that both are "terms of common understanding." *Sendejo v. State*, 676 S.W.2d 454, 456 (Tex. App. 1984). We agree and interpret them according to their normal definitions. A "scheme" is an "artful plot or plan." *Scheme*, *Black's Law Dictionary* (12th ed. 2024). Although the term "course of conduct" has no individual, legal dictionary definition, the phrase has been defined in other criminal statutes as a series of acts over "time that evidences a continuity of purpose." *E.g.*, NRS 200.575 (stalking); NRS 207.260 (unlawfully contacting a child or person with a mental illness). We thus adopt that construction in interpreting "course of conduct" in NRS 205.0834.

*See Castaneda v. State*, 132 Nev. 434, 439, 373 P.3d 108, 111 (2016) (holding that this court interprets statutes by comparison to analogous statutes).

In light of these definitions, we hold that Robinson's actions constituted a single scheme or course of conduct. Robinson systematically took Turner's money over 15 months, slowly draining Turner's bank accounts after Turner received monthly retirement income and Social Security benefits. Robinson's actions advanced a single plot with a single purpose by a single means: enriching himself at Turner's expense by illicitly withdrawing money from Turner's bank accounts. Although Robinson iterated the same steps of the scheme over 15 months, those steps contributed to a single, continuous course of conduct. Allowing a clearly singular course of conduct to be divided into 15 identical courses of conduct would defy the common understanding of "scheme" and "course of conduct" as used in the theft-aggregation statute. Accordingly, the aggregation statute permitted the State to aggregate the 120 transactions into only a single aggregate count of theft. The district court thus should not have convicted Robinson of 15 counts based on the same course of conduct.

We also hold that this error was plain. Given a casual inspection of the record and the plain meaning of NRS 205.0834, it is clear that Robinson was convicted of 15 counts in contravention of the aggregation statute. And as this error resulted in 14 additional felony convictions, the error affected Robinson's substantial rights. Since the State has already elected to charge Robinson with an aggregated count of theft, as opposed to 120 individual counts, we conclude that the appropriate remedy is to vacate all but one of Robinson's theft convictions.[2] *Cf.*

---

[2]As the jury found Robinson guilty of stealing $76,880, the remaining theft conviction should be for that amount.

SUPREME COURT
OF
NEVADA

(O) 1947A

*Castaneda*, 132 Nev. at 446, 373 P.3d at 116 (reversing all but one conviction after a unit of prosecution challenge).

*Incorrectly instructing the jury on elder neglect amounted to harmless error*

Robinson next argues that the district court inaccurately instructed the jury on elder neglect. He argues that Instruction No. 24 should have included the knowledge element that required the jury to determine whether Robinson knew or reasonably should have known that his actions would result in harm to Turner. Robinson argues that the instruction given erroneously stated the law and allowed the jury to convict Robinson on a theory of strict liability. The State asserts that the instruction correctly stated the law and that, even if it did not, other jury instructions cured the mistake.

We generally review whether a jury instruction accurately states the law de novo. *Gonzalez v. State*, 131 Nev. 991, 997, 366 P.3d 680, 684 (2015). If, as here, a defendant did not object to the jury instruction, we review for plain error. *Martinorellan v. State*, 131 Nev. 43, 48, 343 P.3d 590, 593 (2015).

NRS 200.5099(2) criminally penalizes "any person who has assumed responsibility . . . to care for an older person" if the caretaker neglects the older person such that the older person suffers "physical pain or mental suffering." "Neglect," here, is the "failure of a person . . . who has voluntarily assumed responsibility for [an older person's] care to provide food, shelter, clothing or services which are necessary to maintain the physical or mental health of the older person." NRS 200.5092(5). To be liable, the caretaker must "kn[o]w or ha[ve] reason to know that an older person could suffer harm as a result of the accused's actions or failure to act." *Vallery v. State*, 118 Nev. 357, 370, 46 P.3d 66, 75 (2002).

Instruction No. 24 directed that a caretaker for an older person "who has neglected or failed to provide food, shelter, clothing, or services which are necessary to maintain the physical or mental health of the older person or vulnerable person, which results in substantial bodily or mental harm or death," is guilty of neglect of an older person. The instruction defined neglect as "the failure to provide an older or vulnerable person with items or services necessary to maintain the physical or mental health of the older person."

Instruction No. 24 plainly did not instruct the jury on the knowledge element: that the jury had to find Robinson knew or should have known that his actions would result in harm to Turner to convict him of elder neglect. Nor, contrary to the State's arguments, do Instructions No. 16 through 19 communicate the knowledge requirement. Instruction No. 16 instructs the jury that it may use circumstantial evidence to determine Robinson's knowledge or intent. Instruction No. 17 relevantly instructs the jury that Robinson is presumed to have intended the "reasonable and natural consequences" of any intentional acts, but it still fails to indicate Robinson must have known or reasonably should have known that his actions would result in Turner's harm to be convicted of elder neglect. Instructions No. 18 and 19 define "willfully" and "knowingly," but neither term is used in defining elder neglect; instead, the terms correspond to Instructions No. 21 (elder exploitation) and 22 (theft), respectively. Thus, neither Instruction No. 24 nor any other instruction correctly informed the jury as to the knowledge requirement for elder neglect.

We therefore conclude that Instruction No. 24 was inaccurate and that the district court erred in issuing it. Given our holding in *Vallery*, 118 Nev. at 370, 46 P.3d at 75, this error was evident from a casual

SUPREME COURT
OF
NEVADA

(O) 1947A

inspection of the record. But we conclude that the error did not affect Robinson's substantial rights. There was overwhelming evidence that Robinson knew or should have known that his actions would cause Turner harm such that Robinson suffered no prejudice from the failure of Instruction No. 24 to instruct the jury on the knowledge element. The paramedics found Turner in a lawn chair in the bathtub covered in fecal matter. He was slumped over in the chair, wrapping his ankles around the chair legs so as to not fall out of the chair. There were visible sores all over his body, including the three-by-four-inch ulcer. Those sores were so severe that they were unlikely to have developed immediately, meaning that Robinson left Turner in the chair for some period of time. It is obvious that allowing Turner to decay like that would result in harm, particularly after nurses had recently instructed Robinson on how to care for Turner. After considering this evidence, we conclude that issuing the inaccurate instruction was harmless error and decline to reverse Robinson's elder-neglect conviction on these grounds.

*Sufficient evidence supported Robinson's convictions*

Lastly, Robinson contends that insufficient evidence supported his conviction. We review sufficiency-of-the-evidence claims in the light most favorable to the prosecution. *Valentine v. State*, 135 Nev. 463, 467-68, 454 P.3d 709, 715 (2019). We will affirm a conviction if any rational juror could have found the elements of the crime beyond a reasonable doubt. *Id.*

*Elder exploitation*

Robinson argues that the jury heard insufficient evidence that he had Turner's trust and confidence and that he obtained Turner's money through undue influence. He thus argues that the elder-exploitation conviction should be reversed.

SUPREME COURT
OF
NEVADA

(O) 1947A

Elder exploitation is defined in relevant part as "any act taken by a person who has the trust and confidence of an older person" to "[o]btain control, through deception, intimidation or undue influence" of the older person's assets with the intent to permanently deprive the older person of those assets. NRS 200.5092(3). Undue influence, for the purpose of the elder-abuse statutes, "means the improper use of power or trust in a way that deprives a person of his or her free will and substitutes the objectives of another person." *Id.*

The record shows Turner told a social worker that he trusted Robinson and considered Robinson to be his friend. Robinson was Turner's caretaker for several years and was trusted enough to live with Turner and pay his bills on his behalf. This sufficiently demonstrates that Robinson had Turner's trust and confidence. And the evidence established that Robinson had access to Turner's funds because of his position as his caretaker and used that access to take Turner's money and spend it on himself. The State also presented evidence that Robinson was not entitled to spend the money on himself and could use it only to care for Turner. A rational juror thus could have found that Robinson used his position to overcome Turner's will. We therefore affirm Turner's remaining elder-exploitation conviction.

*Theft*

Robinson argues that the State presented insufficient evidence that he withdrew Turner's money from the ATMs, and that even if he did so, it was lawful given his position as Turner's caretaker. He therefore requests that this court reverse his theft conviction.

Nevada's theft statute proscribes the taking of another's property, through various means, "without lawful authority." NRS 205.0832. Relevantly, a defendant commits theft if he or she "[c]ontrols any

property of another person with the intent to deprive that person of the property." *Id.*

The State presented evidence, including Robinson's own admissions, that Turner entrusted Robinson with his debit card and that Robinson would withdraw cash from ATMs using the card. The record also indicates that Robinson cashed checks from Turner's account into his personal account. A social worker testified that Turner gave Robinson access to Turner's bank account for the purpose of caring for Turner, which demonstrates a limit on Robinson's authority to make purchases using Turner's funds. The State went on to introduce evidence that Robinson did not spend the withdrawn money on Turner but instead spent it on gambling. Viewed in the light most favorable to the prosecution, we conclude that a rational juror could have found that Robinson controlled Turner's money, that the control was unlawful because Robinson was permitted to spend Turner's money only on Turner, and that Robinson had the intent to deprive Turner of the money by spending it on Robinson's gambling habits. We therefore affirm the theft conviction.

*Elder neglect*

Robinson argues that there was insufficient evidence that he voluntarily assumed responsibility for Turner. Robinson further argues that there was insufficient evidence that he knew or should have known that his actions would cause Turner harm. He thus argues that his elder-neglect conviction should be reversed.

Elder neglect, discussed in more detail above, is defined as a failure of a voluntary caretaker to provide for an older person such that the older person suffers physical pain or mental suffering. NRS 200.5099(2); NRS 200.5092(5). The defendant must also have known or reasonably

Supreme Court
OF
Nevada

(O) 1947A

13

should have known that his or her actions would result in harm to the older person. *Vallery*, 118 Nev. at 370, 46 P.3d at 75.

During Robinson's police interview, he "affirm[ed] that he was indeed taking care of Mr. Turner." Additional testimony at trial corroborated this assertion. Not only did Robinson identify himself as Turner's caretaker, but he also detailed how he took care of Turner: paying rent and utilities, feeding Turner, and giving him his medication, among other things. The record also showed that Robinson's failure to take care of Turner resulted in Turner's injuries. Turner's most severe wound was a stage-four ulcer, a wound that exposed his bones and likely developed over a period of time. Instead of providing Turner with adequate care, Robinson placed Turner in a lawn chair in the bathroom, where he developed injuries by remaining stationary for too long and was covered in fecal matter. Compounding Turner's injuries was his malnourishment, which was so severe as to prevent doctors from performing surgery on him. And, as we discussed in the context of the deficient jury instruction, ample evidence supported that Robinson knew or should have known that his actions harmed Turner. A rational juror could thus conclude that Robinson had voluntarily assumed responsibility for Turner's care, that Robinson's neglect led to Turner's injuries, and that Robinson knew or should have known that his neglect would cause Turner harm. We therefore affirm Robinson's elder-neglect conviction.

## CONCLUSION

Although we affirm Robinson's conviction as to the elder-neglect count and 1 count each of elder exploitation and theft, we vacate the conviction as to the remaining elder-exploitation and theft counts. The 14 elder-exploitation convictions are vacated for the reasons set forth in *Smith v. State*, in which we held that the unit of prosecution for exploitation is 1

Supreme Court
OF
Nevada

(O) 1947A

14

count per victim. And as NRS 205.0834 allows the State to aggregate the theft crimes only per "scheme or continuing course of conduct," the single-theme thefts here were improperly aggravated into 15 charges. This exceeded the scope of the discretion granted by NRS 205.0834, and we accordingly vacate the conviction as to 14 of the 15 counts. Robinson's remaining claims are unavailing; therefore, we affirm in part and vacate in part the judgment of conviction and remand to the district court to enter an amended judgment of conviction in accordance with this opinion.

_____, J.
Stiglich

We concur:

_____, J.
Cadish

_____, J.
Lee

Supreme Court
of
Nevada

(O) 1947A